**V. S. DiCARLO CONSTRUCTION CO., INC., Respondent,**

v.

**STATE of Missouri, Appellant.**

**No. KCD 29121.**

Missouri Court of Appeals, Kansas City District.

May 1, 1978.

Motion for Rehearing and/or Transfer Denied June 12, 1978.

Application to Transfer Denied July 24, 1978.

John D. Ashcroft, Atty. Gen., Louren R. Wood, Asst. Atty. Gen., Jefferson City, for appellant.

Ernest H. Fremont, Jr., Wm. Dirk Vandever, Popham, Popham, Conway, Sweeny & Fremont, P. C., Kansas City, for respondent.

Before WELBORN, Special Judge, Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ROBERT R. WELBORN, Special Judge, Presiding.

Action by contractor to recover from state for removal of rock under construction contract. Upon submission of cause on stipulated facts, trial court found for contractor. State has appealed.

This controversy arises out of the construction for the State of Missouri of an office building for the Adjutant General and an Emergency Operations Center in Jefferson City. V. S. DiCarlo Construction Co., Inc. ("DiCarlo") submitted a base bid with alternates in the amount of $676,909 to act as general contractor for the project. The DiCarlo bid was the lowest responsive bid and on December 5, 1967, a contract was entered into between the state and DiCarlo.

DiCarlo entered upon the work. In excavating for the foundation, basement and sub-basement of the building, rock was encountered. Contractors had been advised that some rock excavation would be necessary. The state took 10 core borings in the

construction site "to enable the eventual general contractor to ascertain the nature of the soil and rock to be excavated from the site of the building. The results of the test borings (found within the specifications) were given to the architect who transposed the boring locations on the drawings. Additionally, the architect indicated on the drawings a sub-basement floor elevation of 572 feet 7.5 inches. The architect also drew on the drawings profiles of the interpretations of the substances which would be encountered and have to be excavated, and the interpolations of the various elevations at which they would be found between the various core test borings."

A note appeared on the "drawings/plans," as follows:

"Some rock excavation will be necessary to complete the excavation for the new building. Absolutely no blasting will be permitted by any of the trades for excavation for any work of the contract. The plans and specifications show the assumed elevations for rock bearing strata suitable for footings. The contractor shall include in his proposal all earth and rock excavation required to these given elevations in his base proposal, with all labor and materials required to verify the suitability of the rock bearing strata as noted on Sheet S6 General Notes, Note No. 13. Should further rock or earth excavation be later requested, or should suitable bearing rock be found to exist at a higher elevation than shown— unit prices for add or credit to the contract price shall then prevail. Such unit prices are to be submitted with the proposal."

The contract contained the following provision on unit prices:

| | Add | Deduct |
|---|---|---|
| "1. For rock excavation requiring drilling and jackhammering as per Division 02 Section B02 of the specifications—per cubic yard | $200.00 | $10.00 |
| "2. For earth or loose rock excavation by machine per cubic yard | 2.50 | .25 |
| "3. For earth or loose rock excavation by hand per cubic yard | 5.50 | 1.00" |

The excavation portion of 02B 02 read as follows:

"EXCAVATION: This contractor shall study the test borings log and elevations of the new building as shown on the drawings to ascertain the nature of soil and rock to be excavated from the site of the building. For purposes of bidding the Contractor shall submit his base proposal as herein outlined.

"Remove all material now in place as required to excavate including working space for sub-basement floor slab to an elevation 4" below bottom of slab. Further remove rock or material found in place to at least the side of wall or column footings, elevator pit, or depressed floor area bases. Footings are to be placed on rock suitable for the loads to be supported. The approx. elevation for these footing bearing levels to be based on the elevations shown on the drawings.

"A jackhammer hole shall be drilled at least 5' below the bottom of each footing excavation to detect any voids of clay layers that may exist beneath the footing. If such clay layers or pockets are encountered the overlying rock and clay shall be removed to a clean rock surface at a greater depth.

"Rock excavation as required for unit prices shall be defined as rock requiring drilling and jack hammering before removal can be achieved, in footing pits or similar excavation beyond depths shown on the drawings. Loose Rock or clay layers within or between rock strata shall be considered as earth removal in application of unit prices. Unit prices for earth excavation by hand or machine when required beyond depts (sic) shown on drawings shall be provided under the unit prices section of the bidding forms.

"The mechanical and electrical contractors shall submit unit prices for rock and earth excavation for trenches, pits, etc. that may be required for extra work not now shown on drawings, or for use should rock be encountered in Sanitary Sewer main trench to be dug to South of building. All rock or earth excavation within building are

and as shown on the drawings, shall be included in Base Proposal Bid submittal.

"A unit price for rock excavation required beyond indicated depths shall be provided under the unit prices section of the Bidding Forms. Should suitable rock for bearing be found above the elevation given on the drawings, a unit price for rock excavation to be credited to the Owner shall govern. This unit price also to be submitted in the Bidding Forms.

"All soft, broken and easily excavated rock material should be removed from the excavation prior to the placement of footings."

As computed from the drawings and specifications ("borings"), 904 cubic yards of solid rock excavation would have been required. DiCarlo actually removed 1850 cubic yards. DiCarlo made demand of the state for the removal of 946 cubic yards of rock at $200 per cubic yard. The state rejected the claim but did pay DiCarlo $5856 for rock excavation in footings below the sub-basement floor elevation.

DiCarlo filed suit against the state on June 29, 1970. Its petition was in six counts. Count I sought recovery of $244,-800, based on the unit price of $200 per cubic yard for rock excavation beyond that shown on the plans. Count II alternatively sought recovery of the same amount on the grounds that the representations of the plans and specifications as to rock required to be removed were false and misleading. Count III sought recovery of $3300 withheld by the state as liquidated damages. Count IV sought $7067 for work required of plaintiff beyond the contract. Count V sought $6144 of repairs necessitated by acts of other contractors. Count VI sought $26,-433.84 for additional expenses incurred by reason of a change in the sequence of the work, directed by the state.

The state moved to dismiss the petition on the grounds of failure to state a claim. The doctrine of sovereign immunity was the basis of the motion. The trial court sustained the motion. The contractor appealed. The Supreme Court reversed the judgment of dismissal. *V. S. DiCarlo Construc-*

*tion Co., Inc. v. State,* 485 S.W.2d 52 (Mo. 1972).

Upon remand the state moved to dismiss the petition on the grounds that plaintiff had not exhibited its claim "within the limitations of Section 33.120 RSMo" (1969). The motion was overruled on March 29, 1974.

The state thereafter filed no responsive pleading. In July, 1975, the plaintiff moved for a judgment based upon the state's failure to file a responsive pleading.

Apparently prodded by this motion, the state did enter into a stipulation with plaintiff which was filed April 8, 1976, and which became the basis of the submission of the cause. According to the stipulation, DiCarlo incurred additional job expense of at least $179,740, computed on the basis of 946 cubic yards of rock at $190 per cubic yard. The parties stipulated that, if the court found for plaintiff for additional rock excavation, it should find for plaintiff for $10,800 for overhead costs and miscellaneous price increases not included in the claim for removal of rock. They also stipulated that upon finding in favor of plaintiff on the principal claim, plaintiff would also be entitled to judgment of $3300 withheld as liquidated damages.

Upon the basis of the submission and briefs of the parties, the trial court entered judgment for plaintiff in the amounts just stated.

In his memorandum the court considered the state's limitation defense. The court pointed out that the stipulation stated that plaintiff had made timely demand upon the state for the extra work. The court noted that the stipulation contained no reference to how or to whom the claim was made. The court concluded that the suit had been filed within the Statute of Limitations.

The court further found that in the advertisement for bids and the specifications, the state had "indicated what type of material plaintiff would encounter in the excavation * * *." Instead of the type shown, solid rock was encountered, requiring excavation of 946 cubic yards of solid

rock. The court found that the contractor was entitled to rely upon the state's representation as to the type of material to be encountered and that plaintiff was entitled to recover for the extra rock. The court also found that the contract was susceptible to the construction that the provision for extras would cover the rock in question.

■ On its appeal the state first contends that the trial court "erroneously failed to dismiss plaintiff's claim * * * when such claim had not been submitted in the manner and within the time prescribed by §§ 33.120, et seq., RSMo."

Section 33.120, RSMo 1969, provided:

"Persons having claims against the state shall exhibit the same, with the evidence in support thereof, to the comptroller, for his approval, within two years after such claims shall accrue, and not thereafter."

In its brief here on this point, the state has repeated, with some minor additions, the argument advanced by it in the trial court. In fact its brief is largely a copy of the memorandum submitted to the trial court. The difficulty with this approach is that it ignores the trial court's basis for finding against the state on this issue. The state's position was rejected by the trial court because there was nothing before the trial court to show the factual basis for the state's claim. The appellant makes no effort here to demonstrate that such conclusion by the trial court was erroneous. In fact, the state, after the judgment had been entered, sought a hearing in which it might present evidence that plaintiff's claim had not been submitted to the comptroller. The trial court declined to reopen the matter. No complaint has been voiced against that action.

Inasmuch as the state has not shown that the trial court's ruling on the issue was erroneous, this assignment of error is without merit.

■ Appellant's second assignment is that the circuit court erroneously "applied the unit-price provisions of the contract to excavation in the main excavation area of the project" because the unit price for extra

rock excavation applied only to excavation for footings and the contract for the main excavation area was a fixed-price contract.

This point ignores the trial court's finding of liability on the basis of representation. At the best, it goes only to the alternative theory of plaintiff, accepted by the trial court along with the representation theory, of recovery based upon the provisions of the contract for extra work. In its argument, the appellant refers to some representation cases, but the court's factual findings on the representation issue are not questioned. Appellant states that the specifications did not estimate the rock in quantitative terms. However, appellant stipulated that, according to the rock elevations which the state "transposed" on the drawings, the rock to have been excavated was 904 cubic yards. The state further stipulated that respondent's bid "was calculated and made in reasonable reliance on the representations made in the general drawings/plans and specifications prepared by the state and furnished to DiCarlo." The specifications required bidders to study the test borings log and elevations "as shown on the drawings to ascertain the nature of soil and rock to be excavated * * *."

Appellant's burden was to show, in the face of the stipulated facts, that the trial court's conclusion based on the representation count was not supported by the evidence. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). A mere assertion to that effect is not sufficient.

Since appellant has failed to demonstrate that the trial court's finding on the representation count was erroneous, there is no need to consider the argument against the finding that the contract by its terms required the state to reimburse the contractor for the additional rock in accordance with the extra work provisions of the contract.

Judgment affirmed.

All concur.