**John and Beverly CREMER,
Appellants,**

v.

**HOLLYMATIC CORP., Respondent.**

**No. WD 56632.**

Missouri Court of Appeals,
Western District.

Feb. 15, 2000.

Lawrence J. Zimmerman, Kansas City, for appellants.

Joe B. Whisler, Kansas City, for respondent.

Before: Presiding Judge SPINDEN, Judge LOWENSTEIN and Judge ULRICH.

HAROLD L. LOWENSTEIN, Judge.

This is an appeal of a breach of contract action involving the transfer of ownership

of the controlling shares of a corporation. The sellers transferred seventy percent of the corporation's stock to the buyer. The sellers were experiencing hard financial times as was their closely held corporation. Additionally, sellers and the corporation were involved in a pending lawsuit, brought by an independent third party against the corporation. At the heart of the issues on appeal is whether the contract language pertaining to the buyer's agreement to "indemnify and hold harmless" the sellers "for any personal liability" in connection with that pending lawsuit, obligated the buyer only to indemnify sellers for the amount of judgment or also carried an obligation to reimburse sellers for their attorney fees and costs of litigation. The trial court determined the buyer, respondent Hollymatic Corporation (Hollymatic), an Illinois corporation doing business in Michigan, was not, under Michigan law, obligated under the contract language beyond payment of the judgment in that independent lawsuit. The sellers, John and Beverly Cremer ("the Cremers"), have appealed.

## FACTS

The facts, as determined by the circuit court, are as follows: The Cremers were the sole shareholders of Integrated Industrial Services, Inc. ("Integrated"), a corporation that produced rollstock packaging equipment. Hollymatic and the Cremers entered into a contract in 1995, titled Pre-Incorporation Agreement (the "Agreement"). In the Agreement, the Cremers relinquished seventy percent of the Integrated stock to a subsidiary of Hollymatic and gave up control of Integrated's Board of Directors. At the time of the contract, the Cremers and Integrated were having severe financial problems, and, as relates to this case, Integrated was the defendant in a civil suit. Hollymatic recognized and acknowledged the involvement of the Cremers in that pending lawsuit in Jackson County, styled *Inauen Packaging Equipment Corporation, d/b/a VC999, U.S.A., et al. v. Integrated Industrial Ser-*

*vices, Inc., et al.,* (the "Litigation"). Relating to this Litigation, the Agreement contained the following language:

> As part of said consideration, Hollymatic agrees to indemnify and hold harmless *Cremers* but *not Integrated* for *any personal liability* of Cremers in connection with the Litigation and to cause Cremers to be removed as Guarantors on all of the Mercantile Indebtedness of Integrated and to indemnify and hold harmless Cremers for any liability under the Mercantile and Vendor Guaranties. Any net recovery of Cremers of Integrated on their counterclaims, after credit for any offsetting judgment in the litigation, shall be paid to Integrated, the same being deemed an asset of Integrated.

(Emphasis added). Additionally, the Agreement provides that it "shall be governed and interpreted in accordance with the laws of the state of Michigan."

As stated above, the primary issue is whether the Agreement called for an indemnification of the Cremers for some $77,106.78 of attorney fees and costs incurred to defend the suit against Integrated. Several other issues emerged at the bench trial. One issue alleged error by the trial court for failing to allow an amendment of the pleadings to conform to the evidence, as the Cremers claim there had been a waiver of the contract distinction between the Cremers' liability and that of Integrated. A closely related issue alleged it was error to rule there had not been an oral modification of the Agreement. Additional facts will be supplied in the discussion of these issues.

In its Conclusions of Law, the trial court held as follows: The case was based on a pure contractual indemnity claim as opposed to common law indemnity, and, according to Michigan law, the indemnity clause had to be construed in the same fashion as are contracts generally. The court found both the Cremers and Hollymatic argued in their proposed findings of

fact and conclusions of law submitted to the court that the terms of the Agreement were unambiguous, and the court agreed. Since the terms of the contract were unambiguous, the court would not consider extrinsic or parol evidence. In rejecting the Cremers' argument that the court should ascertain the intention of the parties at the time they entered into the Agreement by looking at outside evidence, the trial court found it was required to strictly interpret only the language of the indemnification clause and the intent expressed by that language. Since there was no express mention of indemnification for attorney fees or for costs or expenses, the contract expressed no intent that Hollymatic was to indemnify the Cremers for attorney fees or costs. At trial, counsel for the Cremers made an oral motion to amend the pleadings to conform to the evidence. The Cremers' attorney sought to add a cause of action for waiver, contending that Hollymatic waived the provision in the Agreement whereby Hollymatic agreed to indemnify the Cremers individually but not Integrated. It was argued that evidence had come in at trial, with no objection from Hollymatic, that Hollymatic had never made a distinction between bills and fees incurred by the Cremers individually and Integrated as a corporation, and had therefore waived any claim that there should be a segregation of the fees incurred. This motion was denied at trial.

Post-trial, the Cremers filed a motion to amend the judgment requesting it be modified to reflect judgment in their favor. They contended the evidence presented at trial showed the parties tried, by implied consent, the issue of an oral modification of the indemnification provision. It was argued that by a subsequent oral modification of the Agreement, Hollymatic agreed to pay all the attorney fees and litigation expenses of the Cremers and of Integrated. This motion was denied.

### STANDARD OF REVIEW

On appeal from a judge-tried case, this court must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court may only set aside the trial court's decision if firmly convinced that the judgment is wrong. *Lenger v. Lenger*, 939 S.W.2d 11, 13 (Mo.App.1997) citing *Fulton v. Adams*, 924 S.W.2d 548, 551 (Mo.App. 1996).

### POINTS RELIED ON

### I. Interpretation of the Indemnification Clause

The Cremers' first point is that the trial court erred in finding the indemnification clause was unambiguous and that it excluded attorney fees. The Cremers claim the term "liability," under Michigan law, encompasses attorney fees. Both parties agree the contract is controlled by and must be interpreted under Michigan law.

Again, the Agreement contains the following language: "As part of said consideration, Hollymatic agrees to indemnify and hold harmless Cremers but not Integrated for any personal liability of Cremers in connection with the Litigation..." The issue on appeal is whether the language "any personal liability" includes attorney fees. The trial court, after examining Michigan caselaw, determined that attorney fees were not included within the scope of the indemnification language. Within this first point on appeal, the Cremers raise two sub-points. First, the Cremers contend the trial court generally failed in its interpretation of the indemnification clause language. Second, they argue the trial court erred in failing to analyze the circumstances surrounding the contract in its interpretation.

### A. Interpretation of Indemnification Clause Language

First, this court shall address the trial court's interpretation of the indemni-

fication clause. In *Hayes v. Gen. Motors Corp.*, 106 Mich.App. 188, 308 N.W.2d 452, 458 (1981), the Michigan Court of Appeals held that "[i]t is a long-standing rule in the construction of indemnity contracts that, in order to be effective, the terms must be unequivocal." Citing *Meadows v. Depco Equip. Co.*, 4 Mich.App. 370, 144 N.W.2d 844 (1966), *Fireman's Fund Am. Ins. Co. v. Gen. Elec. Co.*, 74 Mich.App. 318, 253 N.W.2d 748 (1977), *Darin & Armstrong v. Ben Agree Co.*, 88 Mich.App. 128, 276 N.W.2d 869 (1979). Therefore, the terms of the indemnity provision must be "clear; plain; capable of being understood in only one way; [f]ree from uncertainty," Black's Law Dictionary 1528 (6 th ed.1990), in order to be effective. After applying this standard and comparing this case to relevant Michigan caselaw, this court determines the trial court did not err in interpreting the indemnification clause to not include coverage for attorney fees.

In *Hayes*, the question before the court was whether the language "Contractor shall indemnify, hold harmless and defend the Owner" allowed Owner to make a claim for attorney fees. After noting the above standard, that language in an indemnification clause must be unequivocal, the court wrote that "[o]ne could possibly conclude that this language is not specific enough to enable General Motors to make a claim for attorney fees." *Id.* at 458. However, the court went on to hold that "the words 'hold harmless and defend the owner' strongly indicate that Darin & Armstrong had the contractual obligation to defend General Motors." *Id.* The holding in *Hayes* does not support the Cremers' contention that the trial court's interpretation of the indemnification clause was in error. The requirement that the Contractor "defend the Owner" more clearly allows a suit for attorney fees than does the language "indemnify...for any personal liability." This court does not feel the

language in the present indemnification clause unequivocally allows for payment of attorney fees and the *Hayes* holding does not conflict with that decision.

In *Redfern v. R.E. Dailey & Co.*, 146 Mich.App. 8, 379 N.W.2d 451, 456 (1985), the court interpreted an indemnification clause requiring Appellant to indemnify and hold harmless Respondent "against all claims, liabilities, losses, damages and expenses of every character whatsoever." The *Redfern* court opined that this language was much more clear than the language in the *Hayes* case and allowed for payment of attorney fees. In so holding, the court emphasized the language "losses, damages and expenses of every character whatsoever." [1] This language is more clear and unequivocal than the language here in issue, and as the court noted, is even more clear than the language in *Hayes*. Again, the language at issue in *Redfern* more clearly supports inclusion of attorney fees and supports this court's determinations that the language "any personal liability" is simply not "free from uncertainty" and cannot allow for payment of attorney fees.

Finally, the trial court here relied upon *Beaudin v. Michigan Bell Tel. Co.*, 157 Mich.App. 185, 403 N.W.2d 76 (1986) in reaching its conclusion that attorney fees were not permitted. In that case, the court held the language "all other claims" did not include coverage for attorney fees. Appellants argue the trial court's reliance on *Beaudin* was inappropriate since "a 'claim' is different from a 'liability'." However, it is not a comparison of the language "all other claims" to the language "any personal liability" that supports the trial court's verdict. The *Beaudin* court held that "[t]he language does not expressly allow indemnification for attorney fees, costs or any other expenses." *Id.* at 78. This holding clearly supports the trial

---

1. It is interesting to the present appeal that, though the word "liabilities" appeared in the *Redfern* indemnification clause, just as it does in the clause here in issue, the *Redfern* court

did not rely upon the word "liability" in reaching its conclusion that attorney fees were covered by the clause.

court's verdict that the Cremers were not entitled to reimbursement for attorney fees because the language of the indemnification clause did not "expressly" so allow.

As the Michigan Court of Appeals held in *Hayes,* terms in indemnification clauses must be unequivocal in order to be effective. The terms of the indemnification clause in issue are not so "clear" and "free from uncertainty" to allow for the recovery of attorney fees. Under this rule and Michigan caselaw, the trial court did not err in its legal conclusion that the Agreement did not require Hollymatic to reimburse the Cremers for attorney fees incurred. This point is denied.

### B. Failure to Examine the Circumstances Surrounding the Contract

■ The second sub-point is that the trial court erred in failing to examine the circumstances surrounding the contract when making its interpretation. Appellants rely on *Zurich Ins. v. CCR and Co.,* 226 Mich.App. 599, 576 N.W.2d 392, 396 (1997) in which the court held that even within an unambiguous contract, "if a contractual term is otherwise ambiguous or subject to more than one possible construction within the four corners of the written instrument and the circumstances or relations of the parties underlying the contract resolve that ambiguity, the Court must inquire into them in performing its interpretive function." The Cremers apparently argue that "any liability" is ambiguous, and therefore, the trial court should have considered the fact that the Litigation was ongoing when the Agreement was entered into by the parties. No authority is cited to support the assertion that "any liability" is ambiguous. Additionally, the trial court specifically found that the entire indemnification clause was unambiguous and that both the Cremers and Hollymatic had made that argument at trial. Further, the Cremers do not explain how the fact that the Litigation was ongoing when the Agreement was en-

tered into could possibly shed light on any ambiguity found in the phrase "any personal liability." This argument is without merit and is denied.

### II. Parol Evidence

■ The Cremers' second point is that the trial court erred in disregarding parol evidence of the parties' intentions regarding the Agreement. The Cremers argue this evidence should be considered where a contract is ambiguous.

■ At trial, the Cremers argued the contract was unambiguous. The trial judge, in his findings of fact, which are not here contested, found, "[b]oth parties have argued to the Court that the language and terms of the Agreement are unambiguous." Further, in the court's conclusions of law, also uncontested by the Cremers, it was written, "[b]oth the Plaintiffs [the Cremers] and Defendant [Hollymatic] have argued in their proposed findings of fact and conclusions of law that the terms of the Agreement are unambiguous, and the Court agrees." The Cremers have advanced the theory of contract ambiguity for the first time on appeal. "On appeal, a party is bound by the position taken in the trial court, and an appellate court will not convict the trial court of error on an issue which was not put before it." *Boshers v. Humane Soc. of Missouri, Inc.,* 929 S.W.2d 250, 254 (Mo.App.1996) citing *Scott v. Edwards Transp. Co.,* 889 S.W.2d 144, 147 (Mo.App.1994). Point denied.

### III. Motion to Amend the Pleadings

As their third point, the Cremers contend the trial court erred in denying their trial motion to amend the pleadings to conform to the evidence. The Cremers assert they presented evidence at trial that Hollymatic waived the indemnification provision whereby it would indemnify the Cremers individually for attorney fees, but not Integrated. However, due to the decision of this court in point number one above, this issue is now moot. Whether or not Hollymatic waived the provision for

fees as to Integrated is irrelevant after deciding the indemnification clause does not provide coverage for attorney fees at all. This issue need not be decided by this court.

## IV. Post–Trial Motion to Amend the Judgment

■ The Cremers' fourth point is that the trial court erred in denying their post-trial motion to amend the judgment. The Cremers' motion was essentially another request for the court to amend the pleadings to conform to the evidence presented at trial. However, this post-trial motion rested upon a different theory: that the unpled issue of a subsequent oral modification of the indemnification provision was tried by the implied consent of the parties. The Cremers claim they introduced evidence at trial showing there was an oral modification of the Agreement whereby Hollymatic agreed to pay the attorney fees and litigation expenses incurred by both the Cremers and Integrated.

Rule 55.33(b), dealing with amendments to pleadings to conform to the evidence, reads in pertinent part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment…If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended…

The Cremers assert the issue was tried by the implied consent of the parties when they introduced evidence relevant to oral modification and Hollymatic failed to object.

The Cremers claim the following evidence went to proof of an oral modification of the Agreement (only that evidence the court believes is relevant and non-repetitive is listed):

(1) Joe Coleman (attorney for the Cremers and Integrated in the separate Litigation) testified he attended a meeting January 27, 1997, between officers of Hollymatic, Beverly Cremer and himself. Mr. Coleman told those in attendance that he could not continue representation in the litigation without payment of fees incurred and without assurance that future fees would be paid. Mr. Coleman testified that Hollymatic's president asked him if $24,000 that week and $12,000 every two weeks would suffice. Mr. Coleman agreed to continue the litigation on that basis.

(2) A check from Hollymatic made payable to Mr. Coleman's law firm in the amount of $24,000 dated January 31, 1997.

(3) A letter dated February 19, 1997, from Mr. Coleman to personnel at Hollymatic, indicating he was enclosing a copy of their bill from December 31, 1996, showing an amount due of $68,459.56. After discussions with Hollymatic's counsel, Mr. Coleman reduced the amount due by $16,087.50. The letter indicated an outstanding balance of $24,772.06 due from Hollymatic.

The Cremers assert the above was sufficient to show an oral modification of the indemnification provision, and so, when the evidence was introduced, that issue was tried by the implied consent of the parties. They make no claim this evidence raised the issues of estoppel or waiver.

■ With regard to amendments to conform to the evidence under Rule 55.33(b), "[a] court should be liberal in permitting such amendments, but it is still a matter primarily within the sound discretion of the trial judge whose ruling will not be disturbed absent obvious abuse of that discretion." *St. Louis County v. Taggert,* 809

S.W.2d 476, 478 (Mo.App.1991) citing *Dillard Dept. Stores, Inc. v. Muegler*, 775 S.W.2d 179, 183 (Mo.App.1989). See also *Schaffer v. Haynes*, 847 S.W.2d 814, 818 (Mo.App.1992), *Pace Properties, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 918 S.W.2d 883, 888 (Mo.App.1996). The Cremers bore the burden to demonstrate this issue was indeed tried by implied consent. *Conduff v. Stone*, 968 S.W.2d 200, 205 (Mo.App.1998). Under the fact pattern here involved, this court cannot say the trial court abused its discretion in not allowing this attempt to amend the pleadings. It is not clear to the court that the issue of an oral modification of the Agreement was tried by the implied consent of the parties.

There is caselaw in Missouri holding that "[w]hen evidence is relevant to an issue already in the case and there is no indication that the party who introduced it was seeking to raise a new issue, pleadings are not amended by implication or consent under Rule 55.33(b)." *Murphy v. City of Springfield*, 794 S.W.2d 275, 288 (Mo.App. 1990). See also *Edna Enter., Inc. v. Spirco Envtl., Inc.*, 853 S.W.2d 388, 392 (Mo. App.1993) ("The implied consent rule applies only where the evidence presented bears solely upon the unpleaded issue and not upon issues already in the case."), *Assoc. Eng'g Co. v. Webbe*, 795 S.W.2d 606, 610 (Mo.App.1990), *Bond v. California Compensation and Fire Co.*, 963 S.W.2d 692, 699 (Mo.App.1998).[2] It is not clear that the evidence presented by the Cremers bore solely on the issue of oral modification of the Agreement. The evidence was presented in the context of whether or not Hollymatic *intended* to pay attorney fees. The presentation of evidence relating to Hollymatic's intent as to the payment of attorney fees could obviously go to the pleaded issue of interpretation of the Agreement and the use of extrinsic evidence to explain an ambiguity in the contract. It appears the Cremers presented the evidence in that context. Interpretation of the Agreement was already at issue in the case,[3] therefore, there would have been no reason for Hollymatic to object to the presentation of this evidence at trial. It is not obvious that the Cremers were raising a new issue nor that the issue was tried by the implied consent of the parties. The trial court did not abuse its discretion in denying the Cremers' post-trial motion to amend the judgment, and this court will not disturb its ruling. *Bond*, 963 S.W.2d at 699. Point denied.

The judgment of the trial court is, in all respects, affirmed.

All Concur.

---

**2.** The court notes there is caselaw holding this rule does not apply to all fact patterns, *See Landvatter Ready Mix, Inc. v. Buckey*, 963 S.W.2d 298, 304 (Mo.App.1997), however the cases above mentioned make no reference to such a distinction. The court does not now feel the need to resolve the matter, as this point could be denied under the abuse of discretion standard alone, without reference to this rule.

**3.** Regardless of the fact that the trial court properly determined evidence of the intent of the parties should not have been considered in interpreting the contract, the parties themselves had made intent "at issue" in the case before the trial court's determination.