**Vincent KARPIERZ, Appellant,**

**v.**

**Chief Richard D. EASLEY, et al., Respondent.**

**No. WD 58364.**

Missouri Court of Appeals, Western District.

Nov. 14, 2000.

James McMullin, Esq., Kansas City, for appellant.

Dale H. Close, Esq., Kansas City, for respondent.

Before LOWENSTEIN, P.J., LAURA DENVIR STITH and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

This appeal concerns Missouri's Criminal Activity Forfeiture Act (CAFA),[1] set out in chapter 513, RSMo, 1994.[2] Appellant Vincent Karpierz 1) appeals the trial court's ruling that the respondents, including Richard D. Easley, Chief of Police, and the Kansas City, Missouri Board of Police Commissioners (hereafter referred to simply as the Board) were not required to follow CAFA when police seized money in conjunction with Kapierz's drug arrest and transferred it to federal authorities without having first sought and obtained approval from Clay County's prosecuting attorney and a circuit judge; and 2) further contends that if the authorities confiscated his property under CAFA, he is entitled to pursue an action of assumpsit for unjust enrichment for money had and received to recover the money from the Chief and the Board.

**Factual and Procedural History**

On April 13, 1998, the Kansas City police were granted a search warrant for Karpierz's residence in Clay County based in part on possible illegal drug activity as uncovered by the surveillance of Officer Mark Merrill and in part on marijuana residue recovered from Karpierz's trash.[3] Four days later, Kansas City police officers, including Billie Koetting, who is a detective with the department as well as a deputized FBI agent and U.S. Marshal, engaged in surveillance of Karpierz's residence in anticipation of the arrival of the warrant.

While the officers awaited the warrant, Karpierz left his residence in his van. An officer radioed Merrill and asked him to stop the van so he could talk with Karpierz. Merrill tailed Karpierz and then stopped him for changing lanes without signaling.[4] Merrill arrested Karpierz for that traffic violation and for having no drivers license on his person and then searched Karpierz and his vehicle. Among other things, Merrill recovered $1,029 and ordered the van towed. At the direction of Sergeant Wellington, Koetting then ar-

1. Very generally, this law subjects all property, including money, derived from or realized through criminal activity, to civil forfeiture. The law details who must be notified and who must give approval for a petition to forfeit property, as well as required notices and hearings to be afforded. Net proceeds are to be distributed pursuant to Article IX, Section 7, of the Constitution of Missouri.

2. All further statutory references are to the Revised Statutes of Missouri, 1994, unless otherwise indicated.

3. On appeal Karpierz does not contest the validity of the warrant or the search itself.

4. On appeal Karpierz does not contest the validity of the stop, his arrest or the search of his vehicle pursuant to his arrest.

rived and took possession of the money from the police officers.

While Koetting was with Merrill, the search warrant arrived at Karpierz's residence. Wellington and Detective Gary Gibson were already searching the upstairs portion of the house when Koetting returned. While Koetting was searching the basement, Wellington and Gibson found marijuana and $33,000 upstairs.

During the execution of the search warrant but after the marijuana and money were found, Steven Espeer, who is a detective with the Asset Forfeiture Squad of the Kansas City Police Department, contacted the federal Drug Enforcement Agency (DEA) to see whether it was interested in the investigation. Two DEA agents arrived at the residence and took possession of the marijuana and the money recovered from both the van and the residence. Espeer testified that he decided to contact the DEA because Clay County had never filed a successful forfeiture proceeding pursuant to CAFA during the three years he worked there, and he preferred federal forfeiture over "allowing a drug dealer to get his money back." [5] Pursuant to 21 U.S.C. § 881, the $34,029 was forfeited to the U.S. government. A portion of that money, $21,347.55, was returned to the Kansas City, Missouri, Police Department upon application to the U.S. Department of Justice. Karpierz was convicted of drug charges in state court. He then instituted this civil action alleging violation of CAFA and praying for return of the money from the State of Missouri.

The trial court held that both the $1,029 found in Karpierz's van and the $33,000 found in Karpierz's house pursuant to the search warrant were merely "recovered and inventoried" by the Kansas City police, and that the "decision to seize the money was made by the [DEA], a federal authority." Therefore, the trial court found that CAFA did not apply to this case and held that Karpierz was not entitled to a return of the seized money from the defendants.

**Standard of Review**

This court must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). This court may only set aside the trial court's decision if firmly convinced that the judgment is wrong. *Cremer v. Hollymatic Corp.,* 12 S.W.3d 363, 366 (Mo.App.2000)(further citations omitted).

**I. Under these facts, did CAFA apply, and if so was it violated?**

In his first point, Karpierz argues that the Kansas City police "seized" his currency and did not follow CAFA procedures.

The CAFA legislation uses but does not define the term "seizure." "Where a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended." *PharmFlex, Inc. v. Division of Employment Sec.,* 964 S.W.2d 825, 830 (Mo.App.1997) (quoting *State v. Duggar,* 806 S.W.2d 407, 408 (Mo. banc 1991)).

The term "seizure" has an established, common-law meaning. As defined by the U.S. Supreme Court and adopted by Missouri courts, a "seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Bezayiff v. City of St. Louis,* 963 S.W.2d 225, 232 (Mo.App.1997). According to the common-law definition, there is no question that the Kansas City police "seized" Karpierz's money instead of merely "recovering" and

5. Espeer's testimony is set forth more fully in Part I, *infra.*

"inventorying" it, as the trial court held. And pursuant to § 513.649, Detective Koetting's participation as a member of the Kansas City police does not take this case outside of Missouri's CAFA even though he was deputized both as an FBI agent and as a U.S. Marshal.[6]

In the case of the money recovered from the vehicle, Officer Merrill of the Kansas City police department stopped and arrested Karpierz for traffic violations and pursuant to those violations searched his car and took possession of his money. Karpierz's possessory interests in the currency were clearly divested at that point, not at the point when the money was transferred to federal agents. *Bezayiff,* 963 S.W.2d at 232.

In the case of the money recovered from Karpierz's house, the record shows that although there was later federal participation in the execution of the search warrant, the investigation and seizure were conducted by the Kansas City police. The warrant by a Clay County circuit judge was issued pursuant to surveillance by the Kansas City police. Kansas City police officers awaited and executed the search warrant and found the money and marijuana. Moreover, the following portion of Detective Espeer's testimony indicates that federal agents did not know about the investigation until after the money and marijuana were recovered—legally seized—by the Kansas City police, and in effect shows an intent by the police to avoid invocation of CAFA and its procedural guidelines:

Q. In this case, why did you send the case to the federal level for seizure rather than send it up here to the Clay County Prosecutor's Office?

A. Unfortunately ... Clay County had never filed a successful forfeiture proceeding to that date. We've never had a judgment order for forfeiture proceedings against a state defendant as long as I've been there and still haven't to date.

Q. How long has that been?

A. That's been over three years that I've been on. So as opposed to allowing a drug dealer to get his money back, I decided to contact the federal side and see if they would accept it as a federal seizure.

Q. Did you see that as your only option?

A. I saw it as my only option, yes, other than give the money back to the dope dealer.

The Board argues that because this is a case of first impression, the court can define here when a seizure has occurred for purposes of CAFA. But "[f]orfeiture statutes are 'strictly construed against the state and every word, clause, sentence and provision of such statutes is presumed to have been intended by the legislature to have effect and be operative.'" *State v. Sledd,* 949 S.W.2d 643, 648–49 (Mo.App. 1997). Further, as discussed *supra,* the legislature gave no indication that a seizure should be defined by any different standard than as set forth by established case law, and this court declines to modify the definition.

As a matter of policy, establishing a different definition of a "seizure" under CAFA would make determining when property is seized, where it is seized, and by which entity it is seized extremely difficult. Moreover, any change of the common-law definition of seizure would muddy the effect of Missouri's forfeiture laws.

6. Section 513.649 states: "Any property seized by state or local peace or reserve officers who are detached to, deputized or commissioned by or working in conjunction with the federal agency shall remain subject to [CAFA]." The court is aware of scholarly opinion that § 513.649 may be violative of the Supremacy Clause. *See, e.g.,* Frans J. Von Kaenel, *Missouri Ups the Ante in the Drug Forfeiture "Race to the Res",* 72 Wash. U. L.Q. 1469, 1484–86 (1994). Even if the constitutionality of CAFA had been ruled upon by the trial court, any questions as to the validity of state statutes are not proper before this court; the Supreme Court of Missouri has exclusive jurisdiction. Mo. Const. Art. 5, § 3.

Changing the legal classification from "seizure" to "recovered and inventoried" seems to defy the normal progression of when law enforcement personnel first search a person's place, seize the property, and then inventory the property. *See, e.g., State v. Figgins,* 839 S.W.2d 630, 640–41 (Mo.App.1992). Therefore, by seizing the property and subsequently transferring it to the DEA, the police violated both the letter and the spirit of CAFA.

Under these facts, this court concludes that the Kansas City police seized the money. This brings up the next issue: can a local police department then transfer the contraband to a federal agency with the legal result that the seized property is a federal seizure? Because the $34,029 was obtained as the result of a state seizure, § 513.647.1 of CAFA spells out the next step that our law mandates:

> *No state or local law enforcement agency may transfer any property seized by the state or local agency to any federal agency for forfeiture under federal law until the prosecuting attorney and the circuit judge of the county in which the property was seized first review the seizure and approve the transfer to a federal agency.* The prosecuting attorney and the circuit judge shall not approve any transfer unless it reasonably appears the activity giving rise to the investigation or seizure involves more than one state or the nature of the investigation or seizure would be better pursued under federal forfeiture statutes. No transfer shall be made to a federal agency unless the violation would be a felony under Missouri law or federal law. (Emphasis added.)

"Since the law abhors a forfeiture, before a petition is sustained and forfeiture enforced both the letter and the spirit of the law authorizing the forfeiture must be complied with strictly." *State v. Hampton,* 817 S.W.2d 470, 472 (Mo.App. 1991). The police should have followed § 513.647.1 and allowed a Clay County circuit judge and the county prosecuting attorney to review the seizure and approve the transfer. CAFA, as presently written, does not allow a unilateral transfer by a Missouri police department to a federal agency once the police have seized the property. Any change in this interpretation must come from the legislature.

In sum, implication of the CAFA statute as to contraband taken by state law enforcement personnel is governed by the taking amounting to a seizure. This court rules that without a statutory definition, the common-law definition should apply. Under that definition, a seizure by the Kansas City Police Department occurred in this case. Under CAFA, the fact that an officer participating in the operation had dual authority with a federal agency in no way affected the operation of CAFA. Similarly, the later transfer by the Board to a U .S. agency could not undo the attaching of application of the CAFA statute to the property recovered by the seizure. Under CAFA, a circuit judge and the county prosecutor needed to approve the forfeiture before any transfer to a federal agency became effective. The trial court's judgment that the seizure of the money was made by federal authorities and that CAFA did not apply was an erroneous application of the law and is therefore reversed.

**II. Where a violation of the requirements of CAFA have been established, does the person from whom the property was seized have a remedy against the police for return of the contraband?**

In his second point, Karpierz argues that he is entitled to recover from the Board $34,029 for money had and received. Because the trial court never reached this issue—having determined instead that CAFA had not been implicated and therefore not violated—the trial court never considered appellant's theory of recovery: assumpsit for money had and received. As such, the case will be returned for a

determination of whether Karpierz may recover under his pleaded theory. Although dicta, the court makes the following observations.

"An action for money had and received is an action sounding in assumpsit." *Jurgensmeyer v. Boone Hospital Center,* 727 S.W.2d 441, 443 (Mo.App. 1987). "This claim sounds in contract and waives all torts arising from the incident." *Palo v. Stangler,* 943 S.W.2d 683, 685 (Mo. App.1997). A claim for money had and received is contractual by nature and thus not barred by sovereign immunity. *Id.*

In its brief, the Board argues that CAFA does not provide a private cause of action. The Board relies on *Bradley v. Ray,* 904 S.W.2d 302, 313 (Mo.App.1995) for the proposition that "[t]he creation of a private right of action by implication is not favored and the general trend under Missouri law is away from judicial inferences that a violation of a statute is personally actionable." *See also Johnson v. Kraft Gen. Foods,* 885 S.W.2d 334 (Mo. banc 1994).

Karpierz did not, however, sue under CAFA for damages and does not allege that CAFA itself provides a private cause of action as the plaintiffs did in *Bradley* and *Johnson.* Instead Karpierz sued under the action for money had and received, and such action "has always been favored in the law, and the tendency is to broaden its scope." *Brandkamp v. Chapin,* 473 S.W.2d 786, 788 (Mo.App.1971).

The trial court's judgment is reversed and the case is remanded to determine whether an action for money had and received is appropriate under these facts and where CAFA was applicable to the forfeiture, but was not followed. No costs.

All Concur.