PREMIUM FINANCING SPECIALISTS, INC,
Appellant,

v.

Robert HULLIN and Cory Kristie, Defendants

and

Cougar Enterprises, Inc., Respondent.

No. WD 60708.

Missouri Court of Appeals, Western District.

Sept. 3, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 29, 2002.

Application for Transfer Denied Dec. 24, 2002.

Rodney James Hoffman, Kansas City, for appellant.

Benjamin K. Byrd, Kansas City, for respondent.

Robert Hullin, Corwyn Kristie, pro se.

PAUL M. SPINDEN, Judge.

Premium Financing Specialists, Inc., sued Cougar Enterprises, Inc., and Cougar's two officers for misrepresentation, conversion, and "money had and received"[1] to recover money that one of the officers swindled from PFS. One of the officers, President Corwyn Kristie defaulted on the action, and PFS dismissed its action against the other officer, Secretary–Treasurer Robert Hullin. This appeal deals only with Cougar's liability to PFS.

The circuit court rendered judgment for Cougar on all three counts. PFS appeals only on its misrepresentation and "money had and received" counts and not on its conversion count. PFS asserts that Cougar was vicariously liable for Kristie's misdeeds. We agree that the circuit court erred in rendering judgment for Cougar for misrepresentation and, therefore, reverse the circuit court's judgment.

This dispute arose after PFS discovered that Kristie submitted a false loan application to it on behalf of TCAA, a nonexistent entity. PFS had provided loans to Cougar's insurance clients for many years so the clients could finance their insurance purchases. PFS agreed to lend $41,120 to TCAA so it could purchase insurance through Cougar, a Nevada insurance agency. Kristie fabricated the scheme to obtain the money for his own use. He took advantage of Cougar's longstanding, trusting relationship with PFS in which Cougar had acted as a liaison between its clients and PFS.

PFS deemed Cougar to be a "good agent" with a "good history," so it provided Cougar with blank finance agreements and bank drafts. Cougar typically submitted the agreements to PFS on which Cougar's agent signed, along with the insured, representing that the information set out was correct and that the insured's signature was genuine. When PFS approved the agreement, it typically paid the loan proceeds directly to Cougar, and Cougar forwarded the funds to the insurer. During 1997, 1998, and 1999, Cougar submitted 154 premium finance agreements to PFS, and PFS loaned $905,000 to Cougar's customers.

In reviewing the circuit court's judgment for Cougar, we must affirm it unless it is not supported by substantial evidence or it is against the weight of the evidence or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.

---

1. Lord Mansfield, in Moses v. MacFerlan, 97 Eng. Rep. 676, 680–81 (K.B.1760), described this strangely-named action: "This kind of equitable action, to recover back money, which ought not in justice to be kept, is very beneficial, and therefore much encouraged. It lies only for money which *ex aequo et bono* [in justice and fair dealing], the defendant ought to refund.... [T]he gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money."

banc 1976). In conducting our review, we must view the evidence in a light most favorable to Cougar, the prevailing party. *Ewing–Cage v. Quality Productions, Inc.*, 18 S.W.3d 147, 149–50 (Mo.App.2000).

■■■ PFS argues that Cougar was liable vicariously for Kristie's tortious conduct because Kristie acted with authority apparently conferred by Cougar.[2] Cougar does not deny that Kristie was its agent. A principal is liable vicariously for his agent's acts if the principal manifests his consent to, or knowingly permits, the agent's exercise of authority, and if the third party believed, with a reasonable, good faith basis for doing so, that the agent had authority and relied on the agent's apparently having authority to act. The third party also must show that not holding the principal liable for the agent's acts. *Hefner v. Dausmann*, 996 S.W.2d 660, 667 (Mo.App.1999).

■■■ Cougar responds that it was not liable for Kristie's acts because he acted wholly out of personal motive and with the purpose of defrauding PFS and Cougar. Cougar accurately portrays Kristie's motives, but, in this action seeking to impute liability for the fraudulent acts of an agent acting within his apparent authority, Kristie's motives are of no consequence.[3] When a principal cloaks his agent with apparent authority, the principal can be vicariously liable to wronged third parties even when the agent acts wholly out of personal mo-

tive or with the purpose of defrauding his principal and even when the principal is innocent and deprived of any benefit. RESTATEMENT (SECOND) OF AGENCY § 249, cmt. a ("principal may be liable for the acts of ... an apparent servant who acts wholly for his own purposes"), § 257, cmt. d (principal liable "although the agent [acts] from a motive other than that of serving the principal, or acts with a purpose of defrauding him"), § 261, cmt. a ("principal is subject to liability ... although he is entirely innocent, has received no benefit from the transaction, and ... although the agent acted solely for his own purposes"), and § 265, cmt. a ("motive of the apparent agent is immaterial unless known") (1957).

Indeed, our supreme court declared long ago, "A corporation is liable for a fraud perpetrated on a third person by its agent within the apparent scope of his authority or the course of his employment even where the wrongful acts are ultra vires or in fraud of the corporation itself, and despite the fact that the corporation did not authorize, concur in, or know of, the fraud." *State on Inf. Taylor v. American Insurance Company*, 355 Mo. 1053, 200 S.W.2d 1, 40 (banc 1946). *See also* 37 AM.JUR.2D *Fraud and Deceit* § 311 ("principal may be responsible for his or her agent's fraud or misrepresentation even though he or she may have personally received no benefits therefrom, and it is of no consequence that the agent acts entire-

2. PFS asserts in the argument of its brief that Nevada law governs the issue of Cougar's vicarious liability for the actions of Kristie. The parties did not raise the choice of law issue in their pleadings or arguments before the trial court. The parties deemed Missouri law applicable to their dispute. We do not review for error an issue that was not presented at the trial court. *State ex rel. Nixon v. American Tobacco Company, Inc.*, 34 S.W.3d 122, 129 (Mo. banc 2000).

3. Cougar mistakenly relies solely on principles of *respondeat superior*. Under *respondeat superior*, an employee's act is to be considered within the scope of his employment, thereby creating liability for the employer, unless the employee acted "wholly from some external, independent or personal motive." *P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 624 (Mo.App.1994). The principles of apparent authority are broader than the principles of *respondeat superior;* hence, Cougar's reliance on *respondeat superior* is not dispositive.

ly for his or her own purposes and commits a fraud solely for his or her own benefit, if it is within the actual or apparent scope of his employment"), and § 316 ("corporation is not relieved from liability for the fraudulent acts of its officer within the apparent scope of his or her authority by the fact that the officer, in committing the fraud, is acting for his or her own benefit and the fact that the corporation does not profit by it") (2001). The Supreme Court has also explained:

> "There is a wide distinction to be drawn between the authority of an agent to commit a fraudulent act, and his authority to transact the business in the course of which the fraudulent act is committed. * * * Tested by reference to the intention of the principal, neither negligence nor fraud is within the 'scope of the agency;' but tested by the connection of the act with the property and business of the agency, fraud in taking the very property is as much 'within the scope of the agency' as negligence in allowing others to take it. The proper inquiry is, whether the act was done in the course of the agency and by virtue of the authority as agent. If it was, then the principal is responsible, whether the act was merely negligent or fraudulent."

*Tietjens v. General Motors Corporation,* 418 S.W.2d 75, 84 (Mo.1967) (quoting *Globe Indemnity Company v. First National* *Bank in St. Louis,* 133 S.W.2d 1066, 1071 (Mo.App.1939)).

Cougar granted Kristie authority to act on its behalf. Cougar authorized him to prepare applications to be submitted to PFS, and Cougar submitted a signature card with Kristie's signature indicating that he was authorized to sign on Cougar's behalf. In helping clients to arrange for loans from PFS, Kristie's acts were subject to Cougar's control. Moreover, Cougar did business with PFS under a fictitious name bearing Kristie's personal name, Kristie & Hullin Insurance Services. These were sufficient to give PFS a reasonable basis for believing, in good faith, that Kristie had authority to act on Cougar's behalf in obtaining loans for Cougar's clients.

PFS also established sufficiently that it would be injured or suffer loss if Kristie's acts did not bind Cougar. PFS demonstrated that it was not likely to be able to gain restitution from Kristie, given his being incarcerated and being under order by a Nevada court to make approximately $281,000 in restitution.

■■■ PFS made a submissible case that Cougar was vicariously liable for Kristie's torts against PFS. Cougar responds, however, that it should be excused from liability because PFS did not establish all of the elements of misrepresentation.[4] Cougar contends that PFS did not

---

**4.** PFS asserted a claim for misrepresentation against Cougar without specifying a particular species of misrepresentation. Missouri also recognizes a cause of action for negligent misrepresentation which is "premised upon the theory that the speaker believed that the information supplied was correct, but was negligent in so believing." *Colgan v. Washington Realty Company,* 879 S.W.2d 686, 689 (Mo.App.1994). Kristie knew that the loan application was false, so his misrepresentation could not be deemed negligent. We, therefore, review this issue as a claim for intentional or fraudulent misrepresentation. The elements of fraudulent misrepresentation are: (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury. *Gast v. Ebert,* 739 S.W.2d 545, 547 (Mo. banc 1987).

prove that it reasonably relied on Kristie's false representation because PFS was in a position to discover the misrepresentation and negligently failed to do so.

■ When parties stand on equal footing and have an equal opportunity for discerning the truth or falsity of a representation, the representation generally is not actionable. " '[I]f one ... neglects means of information within easy reach, he should suffer the consequences.' " *Universal C.I.T. Credit Corporation v. Tatro*, 416 S.W.2d 696, 703 (Mo.App.1967) (quoting *Cantley v. Plattner*, 228 Mo.App. 411, 67 S.W.2d 125, 130 (1934)). This rule, however, does not apply in cases such as this one in which a party makes distinct and specific representations for the purpose of inducing the other party to act upon them. *Id.* at 703–04; *Tietjens*, 418 S.W.2d at 82; *Iota Management Corporation v. Boulevard Investment Company*, 731 S.W.2d 399, 413 (Mo.App.1987).

■ Kristie made distinct and specific representations of fact: that the information in the premium finance agreement was correct and that the signatures were genuine. He made these representations to induce PFS to make a loan. Cougar is not excused merely because PFS, with some diligence, could have discovered Kristie's misconduct. As the Supreme Court said:

"If the representation were of a character to induce action, and did induce it, that is enough. It matters not, it has well been declared, that a person misled may be said, in some loose sense, to have been negligent; for it is not just that a man who has deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or 'You were yourself guilty of negligence.' "

*Tietjens*, 418 S.W.2d at 82 (quoting *Cottrill v. Crum*, 100 Mo. 397, 13 S.W. 753, 755 (1890)).

■ Cougar further argues, "PFS's action for money had and received sounds in contract and therefore waives all torts arising from the incident." Cougar relies on *Karpierz v. Easley*, 31 S.W.3d 505, 511 (Mo.App.2000), in which this court said, in self-described "dicta," " 'An action for money had and received is an action sounding in assumpsit.' ... 'This claim sounds in contract and waives all torts arising from the incident.' *Palo v. Stangler*, 943 S.W.2d 683, 685 (Mo.App.1997)." Cougar misunderstands the point.

The *Karpierz* and *Palo* courts were not saying that "money had and received" was the exclusive remedy. They merely were saying that, when a plaintiff can sue for either a tort or "money had and received," as is true in this case, the plaintiff must make an election of remedies. He cannot "double dip" by collecting twice for one injury under tort and under contract.

■ PFS was obligated to assert all of its claims arising out of Kristie's misconduct or have them deemed waived. As this court's eastern district noted, " 'By waiving [a] tort and suing in contract, a party necessarily waives the entire tort, and cannot recover part of his damages in contract and afterward maintain an action in tort for the balance, and it is not only with regard to defendant in the action brought that the waiver operates, but as regards others as well[.]' " *Perez v. Boatmen's National Bank of St. Louis*, 788 S.W.2d 296, 299 (Mo.App.1990) (quoting 1A C.J.S. *Actions* § 123 (1985)). Merely filing a lawsuit does not constitute an election of remedies. *King v. Guy*, 297 S.W.2d 617, 622 (Mo.App.1956).

Rule 55.06(a) says, "A party asserting a claim to relief as an original claim ... may join, either as independent or as alternate

claims, as many claims, legal or equitable, as the party has against an opposing party." This court's eastern district explained:

> A plaintiff may not split a cause of action and try a single claim piecemeal against different defendants one by one. *State ex rel. Todd v. Romines,* 806 S.W.2d 690, 692 (Mo.App.1991). A claimant may, however, bring separate and distinct causes of action separately, even if they arise out of the same transaction. *Id.* The test for determining whether or not a cause of action is single, and cannot be split, is: (1) whether the separate actions brought arise out of the same act, contract, or transaction; or (2) whether the parties, subject matter, and evidence necessary to sustain the claim are the same in both actions. *Id.*

*Miller v. SSI Global Security Service,* 892 S.W.2d 732, 734 (Mo.App.1994).

Had PFS asserted only its "money had and received" claim to final judgment, that election would have waived all subsequent tort claims arising from the same incident. This, of course, is not what occurred. In accord with Rule 55.10, which allows a party to "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or equitable grounds," and with Rule 55.06(a), PFS asserted its three claims.

Because we conclude that Cougar is vicariously liable for Kristie's actions and that PFS established the elements of misrepresentation sufficiently, we need not reach PFS' second point of error as to its count for "money had and received." We reverse the circuit court's judgment for Cougar on Count I, the misrepresentation claim. Kristie and Cougar are jointly and severally liable for PFS' loss.

ROBERT G. ULRICH, Presiding Judge, and EDWIN H. SMITH, Judge, concur.