STATE of Missouri ex rel. MISSOURI STATE HIGHWAY PATROL, Relator,

v.

The Honorable Charles E. ATWELL, Judge of the Circuit Court of Jackson County, Missouri, Respondent.

No. WD 61421.

Missouri Court of Appeals, Western District.

Oct. 28, 2003.

Paul Campbell Wilson, Assistant Attorney General, Jefferson City, for appellant.

George Allen Barton, Kansas City, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

RONALD R. HOLLIGER, Judge.

The Missouri State Highway Patrol seeks a writ of prohibition barring the respondent from proceeding in the underlying suit on the basis that the claims against it are barred by the doctrine of sovereign immunity. The second amended petition before the trial court alleges that the relator seized property (cash) in which the plaintiff in the underlying proceeding claims an ownership interest. The petitioner also claims that the cash was given to federal authorities by relator in violation of Missouri's Criminal Activity Forfeiture Act, Section 513.647, RSMo.2000.[1] Respondent denied relator's motion to dismiss on the grounds of sovereign immunity. The plaintiff below did not plead a waiver of sovereign immunity in reliance upon a prior decision of this court in *Karpierz v. Easley*, 31 S.W.3d 505 (Mo.App. 2000). Believing that relator may be able to plead a waiver of sovereign immunity or claims that are not barred by sovereign immunity, we exercise our discretion and determine that a writ should not issue. *State ex rel. Pub. Hous. Agency of City of Bethany v. Krohn*, 98 S.W.3d 911, 912 (Mo.App.2003).

■ Plaintiffs second amended petition asserts three theories in separate counts: assumpsit for money had and received, unjust enrichment, and replevin.

---

1. There are other plaintiffs and other defendants for different seizures that are not relevant for this particular writ proceeding.

An action for replevin does not generally lie for money absent an identifiable, specific fund of money. *A.R. By and Through C.R. v. Topper,* 834 S.W.2d 238, 239 (Mo. App.1992). Replevin of specific property presumably would not raise sovereign immunity issues because there would be no disbursement of money from the public treasury. The action for money had and received is a remedy at law governed by equitable principles and founded upon an implied contract created by law. *Weltscheff v. MCI,* 604 S.W.2d 796, 801 (Mo. App.1980). "Unjust enrichment occurs when a person retains and enjoys the benefit conferred upon him without paying its reasonable value." *Smith v. Smith,* 17 S.W.3d 592, 597 (Mo.App.2000).

▮ The plaintiffs argue that under *Karpierz,* a claim for money had and received is not barred by sovereign immunity. The State argues that we misstated the law in *Karpierz* when we said:

An action for money had and received is an action sounding in assumpsit. *Jurgensmeyer v. Boone Hospital Center,* 727 S.W.2d 441, 443 (Mo.App.1987). This claims sounds in contract and waives all torts arising from the incident. *Palo v. Stangler,* 943 S.W.2d 683, 685 (Mo.App.1997). *A claim for money had and received is contractual by nature and thus not barred by sovereign immunity. Id.*

*Karpierz,* 31 S.W.3d at 511 (emphasis added). Specifically, the relator argues that the emphasized statement is *obiter dictum* and misstates the law. The relator is correct that the statement in *Karpierz* is dicta because no issue of sovereign immunity was raised. More importantly, however, is that neither *Karpierz* nor *Palo* upon which

it relied cited existing contrary and binding Supreme Court precedent. *Palo,* in turn, relied upon *Gavan v. Madison Memorial Hospital,* 700 S.W.2d 124, 126 (Mo. App.1985), which again did not consider contrary Supreme Court authority.

In *Gavan,* the court held that a hospital was not protected from suit for breach of contract for the hospital's failure to follow its own personnel policies on termination because the suit was essentially a contract claim. The court based its decision on its understanding that *V.S. DiCarlo Construction Co., Inc. v. State of Missouri,* 485 S.W.2d 52, 56 (Mo.1972), *appeal after remand,* 567 S.W.2d 394 (Mo.App.1978), held that "when the state enters into a validly authorized contract, it lays aside whatever privilege of sovereign immunity it otherwise possesses and binds itself to performance just as any private citizen." *Gavan,* 700 S.W.2d at 127. *Gavan* viewed *DiCarlo* as holding that the State is not protected from suits sounding in contract. While *DiCarlo* does stand for the proposition that the State may not be protected by sovereign immunity on some contract actions, it does not hold that all claims against the state sounding in contract, implied contract, or equity are not barred by sovereign immunity. Rather, *DiCarlo* stands for the proposition that the State does have sovereign immunity generally in contract claims but waived that immunity and consented to be sued when it entered into the contract with DiCarlo Construction.[2]

▮ *Gavan* did not in fact involve an implied contract or invocation of equitable principles but rather an express contract. In prior cases our Supreme Court has held that the doctrine of sovereign immunity

---

2. This conclusion is buttressed by the history of attacks and consideration of the doctrine of sovereign immunity leading up to its abrogation in tort cases in *Jones v. State Highway* *Commission,* 557 S.W.2d 225 (Mo. banc 1977) and the subsequent legislative reinstatement of sovereign immunity in tort with certain exceptions in RSMo. § 537.600.

does apply to actions for money had and received. *Kleban v. Morris,* 363 Mo. 7, 247 S.W.2d 832 (1952), and *Gas Service Co.v. Morris,* 353 S.W.2d 645 (Mo.1962). We believe we were incorrect when we spoke so broadly and in dicta in *Karpierz* that sovereign immunity was not even an issue in non-tort cases. Nevertheless, *Kleban* and *Gas Service* do not stand for the proposition that sovereign immunity cannot not be waived and the State thereby consents to be sued in implied contract as well as express contract situations. The State's intent to allow itself to be sued must be express although the language reflecting that intent need not be express. *Bachtel v. Miller County Nursing Home,* 110 S.W.3d 799, 803–804 (Mo. 2003).

We believe that the plaintiffs below have been misled by their reliance upon our misstatement of law in *Karpierz* and as a result have been led to believe that there was no necessity to plead an express or implied waiver of sovereign immunity for violations of the CAFA transfer provisions. See *Brennan By and Through Brennan v. Curators of the Univ. of Mo.,* 942 S.W.2d 432, 434, 436 (Mo.App.1997), for the proposition that sovereign immunity is not an affirmative defense and that claimant must plead an exception or waiver.

Additionally, the plaintiffs below may have other theories such as the "takings clause" of the Missouri Constitution or arising in due process that arguably may not be barred at all by sovereign immunity. See *Yahne v. Pettis County Sheriff Dep't.,* 73 S.W.3d 717, 724 (Mo.App.2002). Again plaintiffs may have been dissuaded from considering and pleading such theories because of our misstatement of law in *Karpierz.*

 A writ does not issue as a matter of right but in the discretion of the court. We exercise our discretion to issue a writ of prohibition "when the facts and circum-stances demonstrate unequivocally that there exists an extreme necessity for preventative action." *State ex rel. J.E. Dunn Constr. v. Fairness in Constr. Bd. of City of Kansas City,* 960 S.W.2d 507, 511 (Mo. App.1997). Although prohibition is an appropriate remedy where a defendant is immune from a suit as a matter of law, *State ex rel. St. Louis Hospital v. Dowd,* 908 S.W.2d 738, 740 (Mo.App.1995), we are not convinced that the facts alleged here, given the current state of the pleadings, permit us to reach that conclusion. See *State ex rel. Public Housing Agency of City of Bethany,* 98 S.W.3d at 915. We, therefore, dismiss our preliminary writ.

JAMES M. SMART, JR., Presiding Judge, and ROBERT G. ULRICH, Judge, concur.

### *Concurring Opinion*
JAMES M. SMART, JR., Judge.

In view of the fact that this court mistakenly stated in dictum in *Karpierz* that sovereign immunity relates only to tort actions, and plaintiffs relied upon that dictum, I concur that the preliminary writ should be dissolved. Although plaintiff's claims, as pleaded, are less than adequate, plaintiffs should, as a matter of fairness, be allowed to amend. I write separately to emphasize that, despite our mention in *Yahne,* 73 S.W.3d at 724, that Yahne's alleged right to recover property wrongfully taken "arises from concepts of due process," it is not clear whether, in view of the underlying facts, that *these plaintiffs* can state a cause of action.

The Criminal Activity Forfeiture Act, adopted in 1986, regulates the civil forfeiture of property "used or intended for use in the course of, derived from, or realized through criminal activity." § 513.607.1. State and local law enforcement authorities may obtain a forfeiture by a civil

procedure that may be brought either before or after seizure. § 513.610. The interest of an "innocent party" shall not be subject to forfeiture. § 513.615. *See State v. Dillon,* 41 S.W.3d 479 (Mo.App.2000). An "innocent party" is one who did not have actual knowledge that the property was "used or intended for use in the course of, derived from, or realized through criminal activity." *Id.*

Seven years after the adoption of CAFA, the General Assembly amended the law to include a provision (§ 513.647) prohibiting transfer of funds to a federal agency for a forfeiture proceeding in federal court unless certain conditions are met. *State v. Sledd,* 949 S.W.2d 643, 646 (Mo.App.1997). The amendment was adopted because local law enforcement authorities had developed a pattern of transferring funds to federal agencies for forfeiture in federal courts under an agreement with federal authorities that a portion of the funds would be rebated to the local law enforcement agency. *State v. Gray,* 21 S.W.3d 847, 851 (Mo.App.2000); *see In re U.S. Currency v. United States,* 136 F.3d 581, 583 (8th Cir. 1998) (Loken, J., concurring)

The petition here asserts that the defendant officers, in connection with a drug investigation, seized money and property belonging to the named plaintiffs. Plaintiffs assert that the defendant officers violated section 513.647 by transferring the funds to federal officers without complying with the requirements of that section. Plaintiffs plead that the property, after seizure, was diverted to federal authorities rather than forfeited in a state court under CAFA. The petition did not assert whether the property in question was generated by or used in criminal activity, and did not state whether the plaintiffs were "innocent parties."

In amending CAFA in 1993, the General Assembly imposed limitations on transfers of seized items from local law enforcement to federal agencies. *See State v. Sledd,* 949 S.W.2d 643, 647 (Mo.App.1997). The General Assembly's obvious purpose was to retain funds for local school districts. *See* § 513.623 RSMo 2000; Art. IX, Section 7, Mo. Const. Did the legislature place the amendments in the statute to protect convicted drug dealers by providing for a refund to the convicted drug dealers when the forfeited money or property was improperly transferred? Or was the legislature simply creating procedural barriers to transfer in order to retain the benefit of the forfeiture for the Missouri school districts? Or was it both? This court in *Yahne* concluded that Yahne's proposed theory of recovery did not arise under CAFA itself. 73 S.W.3d at 724. If we were right in *Yahne,* plaintiffs perhaps cannot assert a statutorily expressed or implied right of recovery under the statute. They may be limited instead to a common law or constitutional theory. A common law theory must address the sovereign immunity issue, as the principal opinion notes. It is thus possible that the only theory independent of sovereign immunity would be a constitutional theory, such as a claim under the takings clause of the U.S. or State constitution.

One of the basic unresolved questions is what the court is to do when the property in question is legitimately subject to forfeiture, but was improperly transferred instead of forfeited under Missouri law. Property which is *not* subject to forfeiture should be returned to its owner. See § 513.617.4. Officials have a duty to properly dispose of seized property in their custody. *Sledd,* 949 S.W.2d at 646. *See State v. $152,760 in United States Currency,* 87 S.W.3d 374 (money not subject to forfeiture ordered returned to party from whom seized); *State v. Residence Located at 5708 Paseo,* 896 S.W.2d 532 (Mo.App.

1999) (residence not shown to be forfeitable ordered returned). CAFA, as amended in 1993, now provides specifically that "no property shall be forfeited unless the person charged is found guilty of or pleads guilty to a felony offense substantially related to the forfeiture." Section 513.617; *State v. Eicholz,* 999 S.W.2d 738 (Mo.App. 1999) (when there was no conviction because defendant died while his case was still pending, the money was required under the statute to be returned to the defendant's estate). But what of the case where the person was convicted of a felony related to the forfeiture, and the property was actually subject to forfeiture, and the funds were improperly transferred? What if the school districts do not claim the money?

With regard to assets seized from individuals later convicted of a crime related to the forfeiture (as the State asserts is the case here), Missouri courts have not yet, apart from the dictum in *Karpierz,* addressed the issue.[1] Accordingly, it remains to be seen how plaintiffs will develop and plead their own theory of recovery. However, in all fairness, the plaintiffs here must be given that opportunity.

---

1. *See Madewell v. Downs,* 68 F.3d 1030, 1040–44 (8th Cir.1995). *See also United States v. Various Pieces of Semiconductor Mfg. Equip.,* 649 F.2d 606 (8th Cir.1981); *United States v. Thirty–Six Thousand, One Hundred and Twen-ty–Five Dollars in U.S. Currency,* 510 F.Supp. 303 (E.D.La.1980); *United States v. One 1970 Ford Pick-Up Truck,* 537 F.Supp. 368 (N.D.Ohio 1981).