John R. WOODS and Judith A. Woods,
Plaintiffs–Appellants,

v.

Willis S. HOBSON and Stephanie
A. Hobson, Defendants–
Respondents.

No. 21957.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 15, 1998.

David W. Harlan, Thomas P. Hohenstein, Gallop, Johnson & Neuman, L.C., St. Louis, for appellants.

R. Brooks Kenagy, Steelville, for respondent Willis S. Hobson.

Brian L. Harvell, The Harvell Law Firm, Rolla, for respondent Stephanie A. Hobson.

Before PREWITT, P.J., and CROW and BARNEY, JJ.

PER CURIAM.

John R. Woods and Judith A. Woods (plaintiffs) appeal from a judgment the trial court entered in their action against Willis S. Hobson and Stephanie A. Hobson (defendants) for breach of contract and in defendants' counterclaims for damages for breach of contract for the sale of machinery and tools (Count II of separate counterclaim of defendant Willis S. Hobson) and unjust enrichment for money and labor expended by defendants on plaintiffs' property (Count I of separate counterclaim of defendant Willis S. Hobson and separate counterclaim of defendant Stephanie A. Hobson). The trial court entered judgment for defendants on plaintiffs' claim and for the respective defendants on their individual counterclaims. This court reverses the part of the judgment entered in favor of defendants on plaintiffs' claim. That part of the judgment for defendants on their respective counterclaims is affirmed. The case is remanded.

■ This case was tried by the court without a jury. Its review is in accordance with Rule 73.01(c). "The trial court's decision will be affirmed unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or it is the result of an erroneous declaration or application of law." *Baiwir v. Moody,* 947 S.W.2d 822, 823 (Mo.App.1997).

In early 1993 defendants made arrangements to move from Florida to Missouri. They moved to the guest house on plaintiffs' property in Crawford County. In June, while defendants were occupying the guest house, Mr. Woods and defendants agreed that defendants would fix up another house on plaintiffs' property, the rock house. Mr. Woods testified that he agreed, in return for their fixing up the rock house, "to give them a life estate on a small portion of ... land, perhaps two or three acres, surrounding the rock house." The agreement was not in writing.

During the summer of 1993, defendants began cleaning up the rock house. In September they began working on the house so they could eventually occupy it. Defendants expected to have $30,000 available from the sale of a residence they owned in Florida to

use in remodeling the rock house. This did not occur. Mr. Woods testified that Mr. Hobson called him in the latter part of August 1993 concerning complications in the sale of the Florida residence. Mr. Woods testified:

Q. Did you make an agreement orally with Mr. Hobson at that time?

A. Yes, orally, yes, we did.

Q. And what was your agreement with Mr. Hobson?

A. The agreement was that I would indeed loan them the money—[defendants] the money, by transferring $30,000.00 from my account to a new account that would be set up in their name at the ... brokerage firm where I worked, which was done.

Q. Now, Mr. Woods, would you please tell Judge Seay why it is that you agreed to this $30,000.00 transfer?

A. Well, ... we had shaken hands. [Defendants] and I shook hands on our, basically, the arrangement back in late June, and [Mr. Hobson] had indeed started with the tear-down aspect of the construction which obviously didn't require much money outlay, but by probably late August early September, it was time to start buying fixtures and things, and due to the fact that his real estate transaction didn't finalize, he had to come to me to borrow that money in order to fulfill our agreement that we had made a couple months prior.

Mr. Woods wanted defendants to be out of the guest house before deer season in November. Defendants moved into the rock house a few days before the 1993 deer season began. They occupied it until July 1994 when Mrs. Hobson moved from the property. Mr. Hobson remained at the property until about October of that year when he left Missouri.

Mr. Hobson had machinery and tools that had been used at defendants' property. He testified that when he was preparing to move in 1994, he told Mr. Woods he needed money;

that Mr. Woods agreed to pay him $5,500. Mr. Hobson gave Mr. Woods a bill of sale for the machinery and tools. He testified Mr. Woods never paid the $5,500.

The trial court concluded that plaintiffs were not entitled to recover on their claim for breach of contract because "the arrangement" between the parties was too indefinite to be an enforceable contract. It held:

The time and terms of payment of the $30,000.00 by the Defendants was not determined. By the time Plaintiffs caused their attorney to submit a written contract to the Defendants, Plaintiffs had become aware that the sale of Defendants' home in Florida had not generated the $30,000.00 anticipated. Under the terms of Plaintiffs' proposal, two or three acres were to be surveyed and a description provided for use in Plaintiffs' conveyance of a life interest to the Defendants. Plaintiffs never caused the survey to be completed. Plaintiffs never executed and delivered a deed to the Defendants for a life estate in the rock house and real estate.

■ Plaintiffs' first point on appeal contends the trial court erred in concluding there was not an enforceable contract because of indefiniteness. They point out that their action is one for breach of contract for failure to pay a debt; that it is directed to the circumstances that occurred in August 1993. Plaintiffs' argue that there were two agreements: (1) the one that was reached in June 1993 concerning conveyance by plaintiffs of a life estate in real estate upon defendants completing improvements on the rock house that was on the property,[1] and (2) the loan of $30,000 by plaintiffs to defendants when defendants' expectation of proceeds from the sale of a house in Florida did not materialize. Plaintiffs' action is directed to the latter agreement. They assert it was sufficiently definite to be enforceable. They contend the trial court erred in referring to the circumstances of the first agreement for purposes of construing the second.[2]

1. The record on appeal does not reflect that defendants pursued the completion of their agreement with plaintiffs for conveyance of a life estate in the real estate where the rock house was located. The record does not indicate any

attempt by them to have the agreement completed after their departures from the property.

2. Plaintiffs' and defendants' agreements were made at different times. Plaintiffs note, howev-

■ The trial court found that Mr. Woods told defendants he would place $30,000 in an account for their use; that defendants anticipated repaying the $30,000 with funds they expected to receive from the sale of property. "A 'loan' is 'the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use; and if such be the intent of the parties the transaction will be deemed a loan regardless of its form.'" *In re De Gheest's Estate*, 362 Mo. 634, 243 S.W.2d 83, 90 (1951).

■ Only one statement in the trial court's conclusion that there was no enforceable contract because the terms were "too indefinite" relates to the loan agreement. The trial court concluded, "The time and terms of payment of the $30,000.00 by the Defendants was not determined."

In *Tom Davis Ins. Agency, Inc. v. Shivley*, 799 S.W.2d 195 (Mo.App.1990), a defendant in an action for breach of contract for failure to repay a loan asserted the trial court erred in awarding judgment against him because there was no agreement regarding repayment. This court acknowledged that to maintain an action for breach of contract, there must be an apparent mutual assent of the parties to the terms of the agreement. *Id.* at 197, citing *Randall v. Harmon*, 761 S.W.2d 278, 280 (Mo.App.1988), and *Johnston v. First National Bank and Trust Co.*, 624 S.W.2d 500, 504 (Mo.App.1981). It held, however, that an express agreement concerning terms of repayment was not required; that it may be implied. *Tom Davis Ins. v. Shivley, supra,* at 197.

The trial court erred in holding the loan agreement was too indefinite to be enforced because it did not specify a time and place for repayment. The trial court's conclusion that the terms of the loan agreement failed for indefiniteness for that reason is based on a misstatement of law. *Id. See also Boatmen's Bank of Mid–Missouri v. Crossroads West Shopping Center, Ltd.*, 907 S.W.2d 800, 803 (Mo.App.1995); *Gegg v. Kiefer*, 655 S.W.2d 834, 838 (Mo.App.1983). Point I is

granted. The part of the judgment for defendants on plaintiffs' claim for breach of contract must be reversed.

The allegations of trial court error in plaintiffs' Points II, III, IV and VI are directed to the trial court's conclusion that defendants' affirmative defenses of statute of frauds, repudiation, and accord and satisfaction were applicable to plaintiffs' claim. The trial court's conclusion that the affirmative defenses applied to plaintiffs' claim was based on its determination that the agreement that plaintiffs contended was breached involved a promise to convey a life estate in real estate. As heretofore held with respect to Point I, plaintiffs' breach of contract claim was based on a loan agreement independent of the agreement to convey a life estate in real estate.

■ The trial court did not decide if defendants' affirmative defenses were applicable to the loan agreement. "No claim of error may be considered by an appellate court in a civil appeal unless it was presented to and decided by the trial court." *In re Marriage of Wardlaw*, 809 S.W.2d 470, 473 (Mo.App.1991). This court, therefore, declines review of those points.

■ Point V asserts "[t]he trial court erred in concluding that the life estate agreement [the June 1993 agreement] was too indefinite to constitute an enforceable contract" in that plaintiffs proved the material terms of the agreement, including the parties, consideration and its subject matter. Plaintiffs' claim at trial was based on the loan agreement. They did not seek enforcement of the June 1993 agreement. They may not now pursue a different remedy than they sought in the trial court. *Tubbs v. Delk*, 932 S.W.2d 454, 456 (Mo.App.1996). Point V is denied.

Plaintiffs' remaining points are directed to defendants' counterclaims. Point VII is directed to the separate counterclaims of each defendant for unjust enrichment. Point VIII is directed to Count II of defendant Willis

---

er, that even independent agreements made at the same time and part of a single contract may be severable for purposes of enforcement. *Grease Monkey Int'l, Inc. v. Godat,* 916 S.W.2d 257, 261 (Mo.App.1995).

Hobson's counterclaim for payment for tools and equipment he sold plaintiffs when he moved from the rock house.

Each defendant sought compensation for the value of services and materials expended in restoring the rock house. They contended the money and labor they provided unjustly enriched plaintiffs. The trial court awarded defendant Willis S. Hobson $5,364.32 and defendant Stephanie A. Hobson $4,635.68 on their respective counterclaims for unjust enrichment. The trial court awarded defendant Willis S. Hobson $5,500 for his counterclaim for tools and equipment.

Point VII asserts the trial court erred in entering judgment for defendants on their counterclaims for unjust enrichment; that "(1) there is absolutely no evidence of any intent on the part of [plaintiffs] to pay [defendants] for improvements made to the property or of any expectation by [defendants] of receiving reimbursement from [plaintiffs], (2) [defendants] repudiated the life estate agreement by voluntarily abandoning the property as a result of the breakup of their marriage, and (3) [defendants] were the first to breach the agreements."

Defendants contended that they expended money improving the rock house in reliance on plaintiffs' promise to convey them a life estate in the property where it was situate. They claim the value of plaintiffs' property increased by $19,000 as a result of their actions.

■ In *Zipper v. Health Midwest*, 978 S.W.2d 398 (Mo.App. W.D.1998), the Western District of this court explained the requirements for recovery on a theory of unjust enrichment. *Zipper* recites the definition of "unjust enrichment" stated in *Erslon v. Vee–Jay Cement Contracting Co.*, 728 S.W.2d 711 (Mo.App.1987). "Unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust." 728 S.W.2d at 713. *Zipper* explains that an action for unjust enrichment is based on a theory of quasi contract or contract implied in law. Its elements are (1) a benefit conferred by one party on another; (2) appreciation (or recognition) by the receiving party of the fact that

what was conferred was a benefit; and (3) acceptance and retention of the benefit by the receiving party. *Zipper*, at 412–13.

■ Defendants presented sufficient evidence from which the trial court could find they were entitled to recover on their respective actions for unjust enrichment. They remodeled the rock house on plaintiffs' property. There was testimony that before the work was done on the house, its roof was falling in; that "[i]t was a mess". The trial court found that after defendants moved from the house, plaintiffs rented it for $450 per month. It was occupied continually by the tenant from November 1, 1994, through the trial date, February 26, 1997; that plaintiffs received rental income for that period in the amount of $12,600.

The trial court found defendants contributed $19,766.43 "including both out of pocket expenditures for goods and materials as well as labor and services and travel expenses" to the repair and remodeling of the rock house. It concluded that the construction and remodeling of the rock house increased its value by $40,000.

There was sufficient evidence for the trial court to have found that defendants' labor and expenditure of their own funds (in addition to the funds they secured from plaintiffs) in repairing and remodeling the rock house on plaintiffs' property conferred a benefit on plaintiffs. The rental of the house by plaintiffs was evidence that they recognized the benefit provided by defendants' labor and expenditures. The benefit has been retained by plaintiffs.

The trial court, as fact-finder, viewed the witnesses and assessed their credibility. This court defers to its determinations in that regard. *Wates v. Joerger*, 907 S.W.2d 294, 297 (Mo.App.1995); Rule 73.01(c)(2). There was substantial evidence to support its findings for defendants and against plaintiffs on defendants' individual counterclaims against plaintiffs for unjust enrichment. Those findings were not against the weight of the evidence. There was no error of law as to the trial court's award of judgment for defendants on those counterclaims. Point VII is denied.

Point VIII asserts trial court error in entering judgment for defendant Willis S. Hobson on Count II of his counterclaim for the value of equipment and tools sold to plaintiffs. Plaintiffs contend the trial court's award of damages against them was erroneous because they "proved by a preponderance of the evidence that the transfer of the equipment was intended to be a partial repayment of the loan from [plaintiffs] to [defendants]."

■ Mr. Hobson testified that he signed a bill of sale transferring the property to Mr. Woods in order to get money he needed to move from Missouri, but that he was never paid the $5,500 sales price. Plaintiffs' evidence was that the $5,500 was to be applied as a credit to their loan to defendants. The trial court obviously accepted Mr. Hobson's version. It was free to accept or reject all, part or none of any witness' testimony. *Wates v. Joerger, supra.* This court defers to its assessment of the credibility of the witnesses. The trial court did not abuse its discretion in finding Mr. Hobson's testimony credible. It did not err in finding for him on Count II of his counterclaim. Point VIII is denied.

The part of the judgment finding for defendants on plaintiffs' claim is reversed. The part finding for defendants on their respective counterclaims is affirmed. The case is remanded for determination, consistent with this opinion, of plaintiffs' claim to recover for non-payment of the loan they allege was made to defendants. Whether additional evidence will be required is left to the discretion of the trial court.