**Vincent KARPIERZ, Respondent,**

v.

**Chief Richard D. EASLEY, et al., Stacey Daniels Young, Jeffrey Simon, Joseph Mulvihill, Dennis Eckold, and Kay Barnes, Appellants.**

**No. WD 59588.**

Missouri Court of Appeals, Western District.

Jan. 2, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 2002.

Application for Transfer Denied March 19, 2002.

---

Dale H. Close, Kansas City, for appellant.

James L. McMullin, Kansas City, for respondent.

Before PATRICIA BRECKENRIDGE, Presiding Judge, JOSEPH M. ELLIS, Judge, and GENE R. MARTIN, Senior Judge.

JOSEPH M. ELLIS, Judge.

Appellants Richard D. Easley, Chief of Police, and the Kansas City, Missouri, Board of Police Commissioners appeal from a judgment entered in the Circuit Court of Clay County in favor of Respondent Vincent Karpierz. On remand following this court's opinion in *Karpierz v. Easley*, 31 S.W.3d 505, 507–08 (Mo.App. W.D.2000), the trial court found that Karpierz was entitled to relief against Appellants in his action to recover money seized from him and transferred to the federal government for forfeiture under his cause of action for assumpsit for money had and received, where Appellants had failed to follow the proper statutory procedures in violation of § 513.647[1] of Missouri's Criminal Activity Forfeiture Act ("CAFA"), §§ 513.600–513.653.

The underlying facts of this case, as set forth in this court's previous opinion, are as follows:

On April 13, 1998, the Kansas City police were granted a search warrant for Karpierz's residence in Clay County based in part on possible illegal drug activity as uncovered by the surveillance of Officer Mark Merrill and in part on marijuana residue recovered from Karpierz's trash. Four days later, Kansas City police officers, including Billie Koetting, who is a detective with the department as well as a deputized FBI agent and U.S. Marshal, engaged in surveillance of Karpierz's residence in anticipation of the arrival of the warrant.

While the officers awaited the warrant, Karpierz left his residence in his van. An officer radioed Merrill and asked him to stop the van so he could talk with Karpierz. Merrill tailed Karpierz and then stopped him for changing lanes without signaling. Merrill arrest-

1. All statutory references are to RSMo 1994 unless otherwise indicated.

ed Karpierz for that traffic violation and for having no drivers license on his person and then searched Karpierz and his vehicle. Among other things, Merrill recovered $1,029 and ordered the van towed. At the direction of Sergeant Wellington, Koetting then arrived and took possession of the money from the police officers.

While Koetting was with Merrill, the search warrant arrived at Karpierz's residence. Wellington and Detective Gary Gibson were already searching the upstairs portion of the house when Koetting returned. While Koetting was searching the basement, Wellington and Gibson found marijuana and $33,000 upstairs.

During the execution of the search warrant but after the marijuana and money were found, Steven Espeer, who is a detective with the Asset Forfeiture Squad of the Kansas City Police Department, contacted the federal Drug Enforcement Agency (DEA) to see whether it was interested in the investigation. Two DEA agents arrived at the residence and took possession of the marijuana and the money recovered from both the van and the residence. Espeer testified that he decided to contact the DEA because Clay County had never filed a successful forfeiture proceeding pursuant to CAFA during the three years he worked there, and he preferred federal forfeiture over "allowing a drug dealer to get his money back." Pursuant to 21 U.S.C. § 881, the $34,029 was forfeited to the U.S. government. A portion of that money, $21,347.55, was returned to the Kansas City, Missouri, Police Department upon application to the U.S. Department of Justice. Karpierz was convicted of drug charges in state court. He then instituted this civil action alleging violation of CAFA and praying for return of the money from the State of Missouri.

The trial court held that both the $1,029 found in Karpierz's van and the $33,000 found in Karpierz's house pursuant to the search warrant were merely "recovered and inventoried" by the Kansas City police, and that the "decision to seize the money was made by the [DEA], a federal authority." Therefore, the trial court found that CAFA did not apply to this case and held that Karpierz was not entitled to a return of the seized money from the defendants.

*Karpierz*, 31 S.W.3d at 507–08 (footnotes omitted).

On appeal, this court reversed the trial court's judgment, finding that the money had been "seized," that CAFA applied, and that, by seizing the property and subsequently transferring it to the DEA without following the proper statutory procedures, the police violated both the letter and the spirit of CAFA. *Id.* at 510. We remanded the case to the trial court for a determination of whether Karpierz was entitled to relief under his pleaded theory of assumpsit for money had and received. *Id.* at 511.

On January 5, 2001, the trial court entered its judgment finding that Karpierz was entitled to relief under his theory of assumpsit for money had and received. The trial court found that Appellants had been unjustly enriched through their actions in transferring the seized funds to the federal government without following the mandatory procedures set forth by statute. The trial court entered judgment against Appellants in the amount of $34,029.00 along with prejudgment interest from the date of the unlawful transfer of the funds. Appellants assert three points on appeal.

■ On appeal, this Court must affirm the trial court's judgment unless it is

not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 508. "As the jurisdiction of this forfeiture matter lies within the civil court system, this Court will view the evidence in the light most favorable to the verdict and give the prevailing party the benefit of all reasonable inferences." *State v. Dillon,* 41 S.W.3d 479, 483–84 (Mo.App. E.D.2000).

In their first point, Appellants claim the trial court improperly determined that Karpierz could obtain relief under assumpsit for money had and received "because assumpsit requires the court to imply a contractual relationship and under the facts of this case, no such contractual relationship exists or can be implied." Appellants argue that it is inconceivable that a contractual relationship could have arisen from their actions in arresting Karpierz and seizing his money and that the trial court erred as a matter of law in finding that relief was appropriate.

Appellants incorrectly assert that a contractual relationship is necessary to maintain an action for money had and received. "An action for money had and received is proper where the defendant received money from the plaintiff under circumstances that in equity and good conscience call for defendant to pay it to plaintiff." *Palo v. Stangler,* 943 S.W.2d 683, 685 (Mo.App. E.D.1997). "Such an action lies for restitution of money that belongs in good conscience to the plaintiff, but was obtained by the defendant by duress or other means making it unjust for the defendant to keep the money." *Jurgensmeyer v. Boone Hosp. Ctr.,* 727 S.W.2d 441, 443 (Mo.App. W.D.1987).

The cause of action for money had and received " 'has always been favored in the law, and the tendency is to broaden its scope.' " *Karpierz,* 31 S.W.3d at 511 (quoting *Brandkamp v. Chapin,* 473 S.W.2d 786, 788 (Mo.App. S.D.1971)). A suit for money had and received is an action at law founded upon an implied contract created by law. *Weltscheff v. Medical Ctr. of Independence, Inc.,* 604 S.W.2d 796, 801 (Mo.App. W.D.1980). "[A] contract 'implied in law' or 'quasi-contract' 'is not a contract at all but an obligation to do justice even though it is clear that no promise was ever made or intended.' " *Westerhold v. Mullenix Corp.,* 777 S.W.2d 257, 263 (Mo.App. E.D.1989) (quoting *Calamari & Perillo, Contracts,* § 1–12 (2d ed.1977)). "It is not necessary that an express promise to pay or privity of contract be pleaded or shown, for the law implies both." *Brandkamp,* 473 S.W.2d at 788. "This non-contractual obligation is treated procedurally as if it were a contract, but its principal function is to prevent unjust enrichment." *Westerhold,* 777 S.W.2d at 263.

Accordingly, Appellant is incorrect in asserting that an insufficient relationship existed between Appellant and Karpierz to give rise to an action for money had and received. In this case, Appellants received money from Karpierz by seizing it while executing a search warrant. Appellants had an obligation to properly follow the applicable statutes in their handling of the money seized from Karpierz. *State v. Sledd,* 949 S.W.2d 643, 646 (Mo.App. W.D. 1997) ("State and local officials have a duty to properly dispose of seized property in their custody.").

"The Missouri legislature has established restrictions before state authorities can transfer property seized within the state by state actors to the federal government." *Id.* at 651. "The General Assembly enacted sections 513.647 through 513.653 to limit Missouri law enforcement officers from utilizing federal forfeiture

statutes where Missouri law does not allow forfeiture and to constrain the practice of 'adoption of state seizures' by federal law enforcement agencies." *Id.* at 646. "Before seized property is transferred to a federal agency, a state trial court must ensure that legislative requirements and procedures have been satisfied by state and local prosecutors." *Id.* at 651; *See also Karpierz,* 31 S.W.3d at 510.

The evidence presented to the trial court sufficiently established that Appellants failed to properly handle the money seized from Karpierz and that they intentionally bypassed the requirements of Section 513.647 for the transfer of seized property to a federal agency for forfeiture.[2] Appellants then applied to the federal government to have a portion of those funds returned to them for their own use and, subsequently, the majority of those funds were returned to Appellants.

The trial court found that Appellants had an obligation to handle the seized money in the manner prescribed by statute, that they unlawfully transferred the money to a federal authorities, and that allowing Appellants to benefit from ignoring the requisite statutory procedures would constitute unjust enrichment. This obligation is sufficient to support an action for money had and received. *See Palo,* 943 S.W.2d at 684–85 (plaintiff successfully maintained an action for money had and received against the Division of Child Support Enforcement for sums obtained from the plaintiff in excess of his child support obligation through a withholding order served on the plaintiff's employer that exceeded the amount that he owed for child support). Point denied.

In their second point, Appellants claim "the trial court erred in entering its final judgment in assumpsit for the reason that an action in assumpsit is equitable in nature and a suit in equity requires that the Plaintiff enter the suit with clean hands and Plaintiff, a convicted drug dealer, cannot enter such a suit with clean hands."

An action for money had and received is a *legal action* that is based

---

2. Section 513.647 states:

 1. No state or local law enforcement agency may transfer any property seized by the state or local agency to any federal agency for forfeiture under federal law until the prosecuting attorney and the circuit judge of the county in which the property was seized first review the seizure and approve the transfer to a federal agency. The prosecuting attorney and the circuit judge shall not approve any transfer unless it reasonably appears the activity giving rise to the investigation or seizure involves more than one state or the nature of the investigation or seizure would be better pursued under federal forfeiture statutes. No transfer shall be made to a federal agency unless the violation would be a felony under Missouri law or federal law.

 2. Prior to transfer, in an ex parte proceeding, the prosecuting attorney shall file with the court a statement setting forth the facts and circumstances of the event or occurrence which led to the seizure of the property and the parties involved, if known. The court shall certify the filing, and notify by mailing to the last known address of the property owner that his property is subject to being transferred to the federal government and further notify the property owner of his right to file a petition stating legitimate grounds for challenging transfer. If within ninety-six hours after the filing of the statement by the prosecuting attorney, the property owner by petition shows by a preponderance of the evidence that the property should not be transferred to the federal government for forfeiture, the court shall delay such transfer until a hearing may be held.... At the hearing, if the prosecutor has proved by a preponderance of the evidence that the investigation or seizure involved more than one state or that the nature of the investigation or seizure would be better pursued under the federal forfeiture statutes, the court shall order that the transfer shall be made.

upon equitable principles. *Id.* Even if Karpierz is deemed to have unclean hands based upon his conviction for a drug offense, "the 'clean hands' doctrine does not bar a claim for damages at law." *Marvin E. Nieberg Real Estate Co. v. Taylor–Morley–Simon, Inc.,* 867 S.W.2d 618, 626 (Mo.App. E.D.1993); *See also Kay v. Vatterott,* 657 S.W.2d 80, 83 (Mo.App. E.D. 1983). Consequently, the "clean hands" doctrine "may not serve as a defense to an action for money had and received." *Warren v. Warren,* 784 S.W.2d 247, 254 (Mo. App. W.D.1989).

 Moreover, under the unclean hands doctrine, a plaintiff is only barred because of his conduct if that conduct is the source, or part of the source, of the equitable claim. *Kay,* 657 S.W.2d at 83 (quoting *D. Dobbs, Remedies,* § 2.4 (1973)). " 'What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts.' " *Id.*

In attempting to establish that Karpierz had "unclean hands," Appellants contend that Karpierz was prosecuted and convicted on drug charges and that an individual convicted of drug offenses "cannot enter the court with clean hands." Appellants then assert that Karpierz's current action seeks to recover the proceeds of his illegal drug activity.

 In making their argument, Appellants cite to a finding in the trial court's original judgment, which was reversed by this court on appeal, indicating that the State had filed criminal charges against Karpierz. Appellants have failed to direct this court to any part of the record indicating what offenses Karpierz was charged with or establishing that he was ever convicted of those charges. Furthermore, Appellants have provided no citation to the record, or any further argument, to support their assertion that the seized funds were the proceeds of drug activity.

In short, Appellants have failed to demonstrate that any evidence was presented to the trial court that would have supported their purported "clean hands" defense. Therefore, even if the unclean hands doctrine could properly serve as a defense to a cause of action for money had and received, the trial court could not be deemed to have erred in rejecting this alleged defense. Point denied.

 In their final point, Appellants contend that the Kansas City Police Department is a municipal institution and that, as such, no contract may be implied against it to establish the requisite obligation for an action for money had and received. In support of this argument, Appellants cite to § 432.070 which precludes cities, towns, villages, school districts, and other municipal corporations from entering into contracts unless they are in writing.

 Because of the writing requirement of § 432.070, some courts have held that municipal organizations cannot be held liable in contract under theories of ratification, estoppel, or contract implied in fact. *Duckett Creek Sewer Dist. of St. Charles County v. Golden Triangle Dev. Corp.,* 32 S.W.3d 178, 183 (Mo.App. E.D. 2000). This is because the municipality lacks the authority to enter into an unwritten contract, and such a contract is deemed void. *Halamicek Bros., Inc. v. St. Louis County,* 883 S.W.2d 108, 110 (Mo. App. E.D.1994); *§ 432.070.* "Under section 432.070, 'it is as much ultra vires for a Missouri municipality to incur a liability in the nature of a contractual obligation in the absence of a writing as to incur a liability not within the scope of its corporate powers or one not expressly authorized by law.' " *Duckett Creek Sewer Dist.,* 32 S.W.3d at 183 (quoting *Donovan*

*v. Kansas City,* 352 Mo. 430, 175 S.W.2d 874, 882 (1943)). Based upon this case law, Appellants contend that an action for money had and received cannot be sustained against a municipal entity because the required contractual relationship cannot be implied.[3]

However, neither § 432.070 nor the case law related thereto are applicable to this case. Karpierz theory of recovery is not based on a contract implied in fact. As noted, *supra,* his claim for money had and received rests on "quasi-contract" or a "contract implied at law." "Unlike a contract implied in fact, a contract implied in law is imposed, or created, without regard to the promise of the party to be bound." *Dailing v. Hall,* 1 S.W.3d 490, 492 (Mo.App. S.D.1999) (quoting *Green Quarries, Inc. v. Raasch,* 676 S.W.2d 261, 264 (Mo.App. W.D.1984)). A contract implied in law is not actually a contract and, instead, is an obligation to do justice where no promise was ever made or intended. *Westerhold,* 777 S.W.2d at 263. "This non-contractual obligation is treated procedurally as if it were a contract, but its principal function is to prevent unjust enrichment." *Id.* (quoting *Calamari & Perillo, Contracts, § 1–12* (2d ed.1977)).

Appellants' authority to assume the obligation that gives rise to Karpierz cause of action is not at issue in this case. Appellants' obligation to handle the seized money in a proper fashion arises out of law

from CAFA's statutory provisions. These provisions were duly promulgated by the legislature and are binding upon Appellants. Thus, the provisions of § 432.070 do not render the obligation at issue void, as they would in a case where a contract was implied in fact, and the trial court's finding of a contract implied in law does not run afoul of the cases providing that § 432.070 serves to preclude remedies against municipal entities which are based upon contracts implied in fact.

Furthermore, from a policy standpoint, allowing Appellants to retain the seized money would serve to neuter the provisions of CAFA which require certain procedures to be observed before money seized by the state may be transferred to federal agencies for forfeiture. "The General Assembly enacted sections 513.647 through 513.653 to limit Missouri law enforcement officers from utilizing federal forfeiture statutes where Missouri law does not allow forfeiture and to constrain the practice of 'adoption of state seizures' by federal law enforcement agencies." *Sledd,* 949 S.W.2d at 646.

The issue of whether the seized money was obtained by Karpierz through improper conduct that would warrant its forfeiture would have been judicially determined if Appellants had complied with the requisite CAFA procedures. Through their unlawful actions, Appellants elected to forego such a determination. The trial court correctly found that it would be un-

---

**3.** In response, Karpierz initially asserts that the Kansas City Police Department is a state agency for these purposes and that the provisions of § 432.070 and the case law related thereto do not apply. Karpierz notes that in *Smith v. State,* 2001 WL 471937 (Mo.App. W.D. May 7, 2001), this court held that the St. Louis Police Board was a hybrid agency that was a state agency for some purposes and a municipal agency for others. Karpierz suggests that since this case involves a police

force exercising the State's police powers that it should be deemed a state agency for the purpose of the case at bar. However, we need not address the issue of whether the Kansas City Police Department is a state agency or a municipal entity for these purposes because § 432.070 and the related case law would not be applicable even if the Kansas City Police Department was deemed to be a municipal agency for these purposes.

just to allow Appellants to retain the seized funds under these circumstances. The trial court cannot be deemed to have erred in ordering such funds returned to Karpierz under a theory of money had and received. Point denied.

The judgment is affirmed.

All concur.