**Ruth Julia NORWINE, Plaintiff–Appellant,**

v.

**Susan Elaine NORWINE, Personal Representative of the Estate of Samuel C. Norwine, Deceased, Defendant–Respondent,**

and

**Susan Elaine Norwine, Successor Trustee Under the Samuel C. Norwine Revocable Trust Agreement, Defendant–Respondent,**

and

**Susan Elaine Norwine, Samuel Junior Norwine, Nona Norwine, Mark S. Norwine, and Joseph Norwine, Individually, Defendants–Respondents.**

No. 24698.

Missouri Court of Appeals,
Southern District,
Division Six.

May 15, 2002.

Robert W. Stillings, Springfield, for appellant.

John E. Price, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, for respondents.

KENNETH W. SHRUM, Presiding Judge.

The question here is whether the trial court erred when it dismissed Plaintiff's two-count petition (which sounded in fraud) based on Defendants' argument that it was barred by the doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). To answer that question, we must decide if a summary judgment entered in June 2000 (which was reversed on appeal) involved the fraud claims or fraud issues that Defendants now argue should be precluded. On this record, we answer, "No." The judgment dismissing Plaintiff's suit based on the defenses of claim and issue preclusion is reversed and the cause remanded to the trial court.

As recounted in *Norwine v. Norwine,* 46 S.W.3d 673, 674 (Mo.App.2001)("*Norwine I*"), this case started when Ruth Julia Norwine ("Plaintiff") sued Susan Elaine Norwine ("Susan") as personal representative of Sam Norwine's ("Sam") estate and as sucessor trustee under Sam's revocable trust. The other defendants are Sam's trust beneficiaries.[1] Initially, Plaintiff (who is Sam's widow) filed a three-count petition. In Count I, Plaintiff sought to impose a constructive trust on three acres of land and a residence in Rogersville, Missouri. Her constructive trust count was rooted in allegations that Sam had acted fraudulently in titling the Rogersville property in his name only. In Count II,

---

1. Collectively, we refer to Susan and Sam's trust beneficiaries as Defendants.

she sought to impose a resulting trust in her favor on the Rogersville property. Plaintiff's Count II pleading incorporated all of the allegations of Count I, including Sam's alleged fraudulent acts. Count III sought damages based upon allegations that Sam defrauded Plaintiff by representing that the Rogersville property would be titled to them as tenants by the entirety when in fact Sam titled the property solely in his name.

On September 20, 1999, Plaintiff filed a motion for summary judgment. On the record currently before this court, we cannot ascertain the breadth of Plaintiff's motion for summary judgment, i.e., whether Plaintiff moved for summary judgment on all three counts as Defendants now allege. This follows because Plaintiff did not include the summary judgment motion in the legal file and Defendants never supplemented the legal file with such motion. What we do find in the legal file are documents denominated "Partial Summary Judgment" dated January 27, 2000, "Judgment" dated May 30, 2000, and "Amended Judgment" dated June 29, 2000. An understanding of these documents is essential to an analysis of the current appeal.

 In its "Partial Summary Judgment," the trial court found Plaintiff was "entitled to Judgment on Count II for a resulting trust." Inexplicably, however, the "Partial Summary Judgment" also contained this language:

"While the [subject] real property is found to be 'marital property;' there is still the question remaining as to what portion of the marital real estate is deemed to be contributed to by Plaintiff. Further the Court finds no fraud on the part of [Sam]."

. . . .

"A hearing shall be held within the next thirty days to determine Plaintiff's contributions. . . . A hearing to determine the source of the funds for the Rogersville home is still necessary in the Court's opinion. . . ." [2]

After conducting an evidentiary hearing on May 30, 2000, the trial court entered a "Judgment" in which it found that the "exhibits produced do not show the exact manner in which the Rogersville home was purchased, with what funds, and from what account." The court then made certain general fact findings relating to how Plaintiff and Sam had conducted their financial affairs in the post-marriage period and concluded its judgment as follows:

"In reaching its conclusion on the partial summary judgment, the Court considers the above factors plus the presumption that Missouri Family Law normally presumes a purchase made by a married couple for a marital home to be as tenants by the entirety unless proven otherwise."

"Therefore, the Court deems that the Rogersville property . . . is held as follows: 75% marital and 25% sole and separate property of Sam Norwine." [3]

**2.** We use the term "inexplicably" for two reasons. First, as stated in *Norwine I,* 46 S.W.3d at 675 n. 1, "the propriety of holding an evidentiary hearing to clarify unresolved issues in a summary judgment proceeding" is questionable. Second, a fraudulent act is not an element of a "resulting trust" claim. *See Norwine,* 46 S.W.3d at 675; *Murphy v. Olds,* 508 S.W.2d 249, 252 (Mo.App.1974). Ambiguity results when the "Partial Summary Judgment" only mentions "Count II for a resulting trust[,]" but then finds "no fraud."

**3.** Nothing in this opinion should be construed as an approval of the trial court's pronouncement that Missouri court's "normally presume[] a purchase made by a married couple for a marital home to be as tenants by the entirety unless proven otherwise[,]" when as here, the subject property was titled solely in one spouse's name.

Later, the trial court amended its May 30, 2000, judgment by declaring "[p]ursuant to Rule 74.01(b) the Court determines that there is no just reason for delay." [4] Thereon, Defendants took the appeal that led to this court reversing the amended judgment in *Norwine I.* In *Norwine I*, we determined that "[t]he Partial Summary Judgment only adjudicated Count II." 46 S.W.3d at 674. Moreover, we concluded that "[b]y finding the evidence disputed on [the] material contribution issue, the trial court erred as a matter of law in granting summary judgment." 46 S.W.3d at 675.

On remand, Plaintiff filed a second amended petition in which she abandoned her attempts to have the trial court impose a constructive trust or implied trust on the Rogersville property and proceeded with a two-count petition seeking damages based on Sam's alleged fraudulent acts. Defendants moved to dismiss the second amended petition based on their claim that the issue of Sam's alleged fraud was resolved adversely to Plaintiff in the "Partial Summary Judgment" and "Amended Judgment" that were at issue in *Norwine I.* Defendants argued to the trial court that Plaintiff's failure to cross-appeal in *Norwine I* and challenge the finding of "no fraud" by Sam barred her from relitigating that issue. The trial court agreed and dismissed Plaintiff's second amended petition.

■■■ On appeal, Plaintiff's sole point charges the trial court erred in dismissing her second amended petition on the theory it was barred by principles of *res judicata* or collateral estoppel. The doctrine of res judicata, or claim preclusion, operates as a bar to the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same litigants or those in privity with them. *Robin Farms, Inc. v. Beeler,* 991 S.W.2d 182, 185[2] (Mo. App.1999). Collateral estoppel, or issue preclusion, precludes the same parties, or those in privity, from relitigating issues which were necessarily and unambiguously decided in the previous final judgment. *Shores v. Express Lending Services, Inc.,* 998 S.W.2d 122, 126[7] (Mo.App.1999). "For either doctrine to apply, *a final judgment* on the merits must have been rendered involving the same claim or issue sought to be precluded in the cause in question." *Robin Farms,* 991 S.W.2d at 185[4] (emphasis supplied).

Defendants claim a final judgment has been rendered on the issue of fraud because of the "no fraud" language in the court's "Partial Summary Judgment." However, the "Partial Summary Judgment" specifically addressed only the imposition of a resulting trust, i.e., Plaintiff's Count II of her first amended petition. *Norwine,* 46 S.W.3d at 674. Because fraud is not an element in a resulting trust claim, the "no fraud" language in the "Partial Summary Judgment" is surplusage. *See Olds,* 508 S.W.2d at 252. Moreover, the "Partial Summary Judgment" was not a final judgment because it was not certified as such pursuant to Rule 74.01(b) and was held open pending further hearing.

■■■ " '[A]n interlocutory judgment is one which reserves or leaves some further question or direction for future determination.'" *State ex rel. Great American Ins. Co. v. Jones,* 396 S.W.2d 601, 603 (Mo.banc 1965) (citation omitted). Generally, a judgment is final and appealable only when it disposes of all issues for all parties in the case and leaves nothing for future determination. *Jackson v. Jackson,*

---

4. In pertinent part, the rule provides: "When more than one claim for relief is presented in an action ... the court may enter a judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay."

970 S.W.2d 391, 392 (Mo.App.1998). However, a trial court has discretion to certify a judgment for appeal, when a case involves multiple claims, under Rule 74.01(b) by expressly finding "no just reason for delay."[5] *Beckmann v. Miceli Homes, Inc.*, 45 S.W.3d 533, 538[5] (Mo.App.2001). Even so, "a judgment that requires external proof *or another hearing* to dispose of disputed issues involved in the litigation is not final for purposes of Rule 74.01(b)." *In re Trust of Bornefeld*, 36 S.W.3d 424, 426[5] (Mo.App.2001) (emphasis supplied).

The "Partial Summary Judgment" was neither final nor subject to being certified as such pursuant to Rule 74.01(b). The "Partial Summary Judgment" was merely an interlocutory judgment which could be added to, amended, or set aside by the court at any time prior to final judgment.[6] *Bolin v. Farmers Alliance Mut. Ins. Co.*, 549 S.W.2d 886, 890[1] (Mo.banc 1977) *overruled on other grounds in Magee v. Blue Ridge Professional Bldg.*, 821 S.W.2d 839, 842 (Mo.banc 1991); Rule 74.01(b). Consequently, the no fraud finding in the "Partial Summary Judgment" is irrelevant because the doctrines of res judicata and collateral estoppel *apply only to final judgments*.

After an evidentiary hearing was held on the "Partial Summary Judgment," the court prepared a "Judgment" that did not include a finding regarding fraud. The only reference to the previous interlocutory ruling was as follows: "In reaching its conclusion on the partial summary judg-

ment, the Court considers...." Apparently, Defendants claim this passage incorporates the interlocutory ruling into the final judgment. We need not decide, however, if that was the trial court's intention when it used such language. This follows because even if the interlocutory ruling was incorporated in the final judgment, *Norwine I* determined that the "Partial Summary Judgment only adjudicated Count II [resulting trust][,]" *Norwine*, 46 S.W.3d at 674, and adjudication of the resulting trust claim did not require resolution of the fraud issue. *Olds*, 508 S.W.2d at 252.

We are confirmed in our view when we note the action of the trial court in certifying the "Judgment" as final for appeal under Rule 74.01(b). Implicit in the trial court's actions was its recognition that other claims were left unresolved, i.e., Counts I and III both based upon fraud. If the judgment rendered had resolved the fraud issues, as Defendants claim, then certification of the judgment as final under Rule 74.01(b) would have been unnecessary.

Because the final judgment only adjudicated the resulting trust claim (Count II), it did not resolve fraud issues. *See Norwine*, 46 S.W.3d at 675; *Olds*, 508 S.W.2d at 252. The lack of a final judgment relating to fraud precludes the application of both doctrines of res judicata and collateral estoppel. *Robin Farms*, 991 S.W.2d at 185[4]. The judgment dismissing Plaintiff's second amended petition is reversed,

---

5. This case was originally filed in the circuit court of Christian County, but during its pendency was consolidated with a case in the probate division of that court. Any doubt about the use of the Rule 74.01(b) procedure was resolved when, on September 29, 1998, the trial court made a declaration that the general rules of civil procedure would apply. *Care and Treatment of Burgess v. State*, 34 S.W.3d 430, 431–32 (Mo.App.2000); Rule 41.01(b).

6. As noted in *Barlow v. Scott*, 85 S.W.2d 504, 519 (Mo.1935), "[t]he very term 'interlocutory judgment' is technically a misnomer, because a judgment really means a final determination of the rights of the parties. 'Interlocutory judgments are in fact interlocutory orders.'" (Citation omitted.)

and the cause remanded for further proceedings.

MONTGOMERY, J., Concurs.

BARNEY, C.J., Concurs.