**Jerry Edward WHITE, Plaintiff–Appellant,**

v.

**CAMDEN COUNTY SHERIFF'S DE-PARTMENT, Sheriff John Page and Chief of Police Laura Webster, Defendants–Respondents.**

No. 25294.

Missouri Court of Appeals, Southern District, Division Two.

June 17, 2003.

James L. McMullin and George A. Barton, Kansas City, for Appellant.

David S. Baker, Fisher, Patterson, Sayler & Smith, LLP, Overland Park, for Chief of Police Laura Webster.

Jeffrey O. Parshall, Susan Ford Robertson, Ford, Parshall & Baker, Columbia, for Sheriff John Page and Camden County Sheriff's Dept.

NANCY STEFFEN RAHMEYER,
Chief Judge.

On August 30, 1998, Jerry Edward White ("Appellant") was arrested while operating his 1991 Ford motor home in the City of Camdenton, Camden County, Missouri at a sobriety checkpoint. Camdenton Police Department officers[1] searched Appellant, his motor home and a female passenger.[2] The officers seized several items, including approximately $1,700 from Appellant's person, $28,287 from various areas of the motor home, a loaded handgun with numerous rounds of ammunition, over seventy grams of marijuana, an Application for Missouri Title and License, a Bill of Sale on the motor home, and a receipt for payment of $16,000 for the motor home. Appellant pled guilty to unlawful use of a weapon (possessing the hand-

---

1. Appellant claims members of the Camden County Sheriff's Department were present and participated in the sobriety checkpoint; however, based on the record, it appears the sobriety checkpoint was sponsored by and conducted solely by the Camdenton Police Department.

2. From what we can glean from the record, none of the respondents were present or participated in the search and seizure at the sobriety checkpoint.

gun found in the motor home),[3] but he was not tried or convicted for illegal drug possession. Appellant was not charged with driving under the influence, which was the alleged underlying offense of the seizure.

On September 3, 1998, the prosecuting attorney of Camden County filed a motion to transfer the property, consisting of $29,987 cash and the motor home, to the federal authorities pursuant to the Criminal Activity Forfeiture Act ("CAFA"), §§ 513.600 to 513.645.[4] Apparently, the motion was not served on Appellant because of an invalid address and was returned as undelivered to the court; nevertheless, the judge of the Circuit Court of Camden County ordered that the property be transferred to the federal authorities for forfeiture. No appeal was taken from that order.

After the transfer order was entered, three Camdenton Police Department Officers, including Chief of Police Laura Webster ("Chief Webster")[5]; Lake Area Narcotic Enforcement Group ("LANEG") Agent Greg Sellers ("Sellers"); and federal Drug Enforcement Administration ("DEA") Special Agent Mike Cooper ("Cooper") met to discuss the transfer order. Cooper told the Camdenton Police Department officers to retain $1,702 that had been found on Appellant's person during the search,[6] and that federal authorities would pursue forfeiture proceedings

regarding the motor home and $28,287 cash. At the conclusion of the meeting, two Camdenton Police Department officers took the money that had been found inside the motor home and exchanged it for a cashier's check made payable to the U.S. Marshall's Service.[7] The check was given to Chief Webster, who then delivered the check to the DEA through Cooper. Chief Webster also turned over custody of the motor home to Cooper at that time; however, rather than incurring storage fees for the motor home, Cooper left it at the Camdenton Police Department until the federal authorities were ready to proceed with its sale. The U.S. Marshal's Service, at the direction of the DEA, sold the motor home for approximately $12,700.

Through a letter dated October 26, 1998, the former Camdenton Police Department Chief of Police, Elmer Meyer, submitted a letter requesting consideration for a portion of the seized property.[8] The Camdenton Police Department received a check from the United States Department of Justice in the amount of $16,852 on April 30, 1999. Camden County Sheriff John Page ("Sheriff Page") submitted a request for "equitable sharing" of the forfeiture proceeds to LANEG because Camden County, Missouri was a member of LANEG, and at that time Sheriff Page was the director of LANEG. A check in the

---

3. Appellant was sentenced to five years imprisonment for the offense of unlawful use of a weapon.

4. All references to statutes are to RSMo 1994, unless otherwise stated.

5. Chief Webster was a captain with the Camdenton Police Department when the facts involved in this dispute occurred; she is now the Chief of the Camdenton Police Department.

6. Initially, it was reported that $1,700 was seized from Appellant's person; however, Cooper instructed the Camdenton Police De-

partment to return $1,702 to Appellant. A check from the City of Camdenton, Missouri made payable to "Jerry E. White c/o Gloria White" in the amount of $1,702 was delivered to Gloria White, Appellant's sister, after Appellant executed a durable power of attorney authorizing his sister to receive this money.

7. Neither of the individual respondents participated in this exchange.

8. Former Police Chief Elmer Meyer was not made a party to this lawsuit.

amount of $9,768.80 payable to LANEG was delivered to the Camden County Sheriff's Department in June 1999. Sheriff Page then sent the check to the secretary for LANEG.

Appellant brought this action against Sheriff Page, the Camden County Sheriff's Department, and Chief Webster seeking return of the property on the basis the statutory procedures set forth in CAFA were not followed. He brought his cause of action pursuant to the theories of assumpsit, unjust enrichment and replevin based on the "unlawful" transfer of the property to federal authorities.

The court delineated the issues as follows:

1) Is the Camden County Sheriff's Department a legal entity capable of being sued?

2) Is the Plaintiff's cause of action a collateral attack on the Transfer Order and Judgment in CV198–557CC, *State of Missouri v. Jerry Edward White, Cynthia K. Stanley,* $29,987.00 in U.S. Currency, and a 1991 Ford Motor Home, VIN 1FDKE30G2HB31327?

3) Do Defendants Sheriff John Page and Laura Webster, Chief of Police, enjoy judicial immunity?

The court answered the first question in the negative, the latter two questions in the affirmative, and dismissed Appellant's petition with prejudice. Appellant appeals the court's findings and the summary judgment entered against him.

Our review of the grant of summary judgment is *de novo. Ribaudo v. Bauer,* 982 S.W.2d 701, 703 (Mo.App. E.D.1998). Because this is an appeal from a summary judgment, we review the record in the light most favorable to the appellant; however, we base our decision on the facts set forth by affidavit or otherwise in support of the motion. *See Reese v. Ryan's Family Steakhouses, Inc.,* 19 S.W.3d 749, 751 (Mo.App. S.D.2000); *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The facts set forth in support of the motion are taken as true unless contradicted by the non-moving party's response to the motion for summary judgment. *Id.* When a moving party makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, the non-moving party is not permitted to rest upon the mere allegations or denials in his pleadings. *Birdsong v. Christians,* 6 S.W.3d 218, 222 (Mo.App. S.D.1999). Failure to respond to the factual allegations of the motion for summary judgment constitutes an admission of the facts contained in the motion. *Id.* at 223. The criteria on appeal for testing the propriety of summary judgment is the same as the standard that should have been employed by the trial court to determine whether to sustain the motion. *ITT,* 854 S.W.2d at 376. "If the trial court grants summary judgment without specifying the basis upon which it was granted, we will uphold the decision if it was appropriate under any theory." *Deer Run Property Owners Ass'n v. Bedell,* 52 S.W.3d 14, 17 (Mo.App. S.D.2001). "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT,* 854 S.W.2d at 380.

Appellant's first point alleges the trial court erred in finding that the Camden County Sheriff's Department, Sheriff Page, Chief Webster, and the Camdenton Police Department are not legal entities capable of being sued. Initially, we note the trial court did not find that Sheriff Page, Chief Webster, and the Camdenton Police Department were not legal entitles

capable of being sued. The court's finding was that the Camden County Sheriff's Department is not a legal entity capable of being sued. That is the sole issue before us. Appellant cites to *Karpierz v. Easley,* 68 S.W.3d 565 (Mo.App. W.D.2002) as the leading case for his proposition that the Camden County Sheriff's Department is a legal entity capable of being sued. *Karpierz* does not provide legal authority that a sheriff's department may be sued as the sheriff's department was not sued in that case. 68 S.W.3d 565. In *Karpierz,* the suit was brought against the Kansas City, Missouri Chief of Police and the Kansas City, Missouri Board of Police Commissioners. 68 S.W.3d at 568. As noted by the trial court, "[Appellant] has not given the Court any statutory authority or other evidence to prove that [the Camden County Sheriff's Department] is a legal entity capable of being sued." We agree. Appellant simply provides no relevant cases to support his position and does not indicate that this is a case of first impression. When an appellant neither cites relevant authority nor explains why authority is not available, this court is justified in considering the point abandoned. *Cooper v. Bluff City Mobile Home Sales, Inc.,* 78 S.W.3d 157, 166 (Mo.App. S.D.2002). Appellant's attempt to link a board of police commissioners or an individual police chief to a "sheriff's department" as a legal entity has no merit. The court correctly found the Camden County Sheriff's Department was not a proper party to the action. Point I is denied.

■ In Point II, Appellant contends the trial court erred in ruling that the current suit was a collateral attack on the judgment of the transferring court in that Appellant did not receive statutory notice of the hearing, had no notice of the transfer hearing, and was not a party to that action. Appellant cites to *Norwine v. Norwine,* 75 S.W.3d 340, 343 (Mo.App. S.D.2002) for the general proposition that res judicata or claim preclusion only operates as a bar to the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same litigants or those in privity with them. *Norwine* does stand for that proposition; however, the case has no application to Appellant's point relied on. Appellant's argument continues with another cite to *Karpierz,* quoting that "collateral attack is not a proper defense in an assumpsit suit against police authorities wherein the police have seized plaintiff's property and it is forfeited by federal authorities." That quote is simply not in the opinion. There is nothing even similar to that quote in the opinion.[9]

■ Although Appellant's point relied on states Appellant did not receive notice, had no notice, and was not a party to that action, Appellant fails to cite any facts in his argument regarding the lack of notice or cases concerning the effect of the lack of notice. Appellant's cite to cases for the general proposition that collateral estoppel or issue preclusion precludes the same parties, or those in privity, from relitigating issues which were necessarily and unambiguously decided in the previous final judgment does not assist him in his point relied on. We find Point II has been abandoned as Appellant failed to state any cases in support of his proposition and failed to develop his argument of the legal effect of not receiving statutory notice or actual notice to the transfer proceeding. "It is not within the province of this court to decide an argument that is merely as-

9. Appellant does not put any statement in the argument section of his brief relating to the lack of statutory notice to him. Appellant fails to develop the facts regarding whether he received actual notice of the transfer hearing or the subsequent forfeiture hearing.

serted but not developed." *Cooper*, 78 S.W.3d at 167. Point II is denied.

■ In Point III, Appellant claims the trial court erred in holding that the respondents had official immunity because official immunity applies to governmental employees in tort cases and not in assumpsit for money had and received or for unjust enrichment. We are now dealing with only the two remaining defendants, Sheriff Page and Chief Webster, as we have already found the court was correct in ruling that the Camden County Sheriff's Department was not a proper party to the action. Sheriff Page argues that official immunity is inapplicable in that his actions were protected by the doctrine of judicial or absolute immunity as his actions in requesting an equitable share of the forfeiture proceeds were made pursuant to a facially valid court order. Chief Webster argues that her actions of simply complying with a court order in turning the check over to federal authorities are protected by judicial immunity. In other words, to succeed on Point III, Appellant must show that the official conduct of Chief Webster and Sheriff Page does not warrant judicial immunity.

Once again, Appellant cites *Karpierz* for his proposition that judicial immunity, as claimed by Chief Webster and Sheriff Page, is not a valid defense because Appellant sued in assumpsit for money had and received and not in tort. *Karpierz* is easily distinguishable because there was no judicial order to transfer funds in *Karpierz*. 68 S.W.3d at 568–69. In fact, the lack of a judicial order and the circumvention of § 513.647.1 were the initial grounds for appeal in *Karpierz v. Easley*, 31 S.W.3d 505, 507 (Mo.App. W.D.2000).

As stated in that opinion, Karpierz brought an action against the Kansas City, Missouri Chief of Police and the Kansas City, Missouri Board of Police Commis-sioners after Kansas City, Missouri police officers, pursuant to a valid search warrant, seized funds from Karpierz's home. *Karpierz*, 31 S.W.3d at 507–08. Rather than follow the procedures set up in CAFA, which include the filing of a motion by the prosecuting attorney and a transfer order by the court of the county in which the property was seized, a detective with the Asset Forfeiture Squad deliberately chose to engage the Drug Enforcement Administration to become involved in the investigation so that the federal agency could take possession of the drugs and money and, subsequently, instigate federal forfeiture proceedings. *Id.* at 508. The Drug Enforcement Administration agents came to the home, took possession of the funds, and subsequently, after forfeiture, returned a portion of the funds to the Kansas City Police Department under the "sharing" arrangement. *Id.*

Karpierz brought suit under an assumpsit theory, which the trial court dismissed upon finding that CAFA did not apply; however, the Western District of this court found that compliance with CAFA was mandatory. *Id.* at 507–08. The appellate court reversed and remanded the case to the trial court for a determination of whether Karpierz could maintain a suit in assumpsit. *Id.* at 511. On remand, the trial court found for Karpierz in his assumpsit suit and the court of appeals affirmed. *Karpierz*, 68 S.W.3d at 569, 574. The three issues on appeal, however, were whether a contractual relationship was necessary to succeed in a suit on assumpsit, whether Karpierz was barred from recovery by "unclean hands," and whether the Kansas City Police Department was a municipal institution such that no contract may be implied against it. *Id.* at 570, 571, 572. There was virtually no discussion of judicial immunity for the officials being sued in that action.

In this action, the requirements of CAFA were complied with, an order was entered and no appeal was taken from the order. Upon a motion filed by the prosecuting attorney, the circuit court entered an order transferring the funds to a federal agency. The affidavits of both of the individual respondents stating that they did not participate in the initial taking of the funds or in the decision to transfer the funds to the federal agency were not challenged by Appellant; therefore, we accept these statements as facts. Chief Webster merely carried out the judicial order by handing the check over to the DEA, and Sheriff Page, after the transfer order was issued, requested that some of the funds be distributed to LANEG. Sheriff Page and Chief Webster's actions were taken pursuant to a facially valid court order.

■■■ Absolute judicial immunity has been adopted by Missouri as recognized by the U.S. Supreme Court. *State ex rel. Bird v. Weinstock,* 864 S.W.2d 376, 382 (Mo.App. E.D.1993); *State ex rel. Raack v. Kohn,* 720 S.W.2d 941, 944 (Mo. banc 1986). Conduct which is "intimately associated with the judicial phase" of the judicial process is protected by absolute judicial immunity. *Burns v. Reed,* 500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (citations omitted). It is the judicial function that requires protection. *State ex rel. Bird,* 864 S.W.2d at 382. "Judicial immunity protects a sheriff who is following a protected judge's orders." *Nelson v. McDaniel,* 865 S.W.2d 747, 748 (Mo.App. W.D.1993).

■■■ The reasoning for the grant of official judicial immunity to law enforcement officers executing facially valid court orders is "essential if the court's authority and ability to function are to remain un-

compromised." *Coverdell v. Dept. of Social & Health Serv.,* 834 F.2d 758, 765 (9th Cir.1987). "[I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a 'lightening rod for harassing litigation aimed at judicial orders.'" *Valdez v. City and County of Denver,* 878 F.2d 1285, 1288–89 (10th Cir. 1989) (citations omitted).

There is no question that Chief Webster transferred the property pursuant to a facially valid court order. There is no question that her conduct was in compliance with the circuit court's express directive that the property be transferred to a federal agency. We find Chief Webster's actions are entitled to absolute judicial immunity. We agree that "[t]o hold otherwise would require sheriffs and other court officers enforcing facially valid orders 'to act as pseudo-appellate courts scrutinizing the orders of judges.' Such a result is 'obviously untenable.'" *Mays v. Sudderth,* 97 F.3d 107, 113 (5th Cir.1996) (citations omitted). Point III is denied with regards to Chief Webster. We find that Chief Webster is entitled to official judicial immunity for her actions in transferring the funds pursuant to a facially valid court order to a federal agency.

■■■ More problematic are the actions of Sheriff Page. Sheriff Page was not executing a valid court order, but rather applied for an equitable share of the forfeiture proceeds following the trial court's entry of the transfer order. There is no judicial business in applying for such an equitable sharing of funds. His actions were purely an administrative act in securing funds for LANEG.[10] The reasoning for applying ju-

---

**10.** In fact, it may be argued that Sheriff Page should not be rewarded for actions that are in contradiction to the Missouri Constitution and Missouri statutes which indicate that the proceeds from forfeitures are to be applied to education in the State of Missouri; however,

dicial immunity to Chief Webster does not apply to Sheriff Page.

The resolution against Sheriff Page concerning judicial immunity for his actions does not end our inquiry; however, as we find Sheriff Page is entitled to summary judgment as a matter of law based upon the motion, affidavit, and response to the motion. The trial court was correct in granting summary judgment to Sheriff Page on the basis that there were no genuine issues of material fact on each of Appellant's claims. The common elements for money had and received, unjust enrichment, and replevin are that Sheriff Page must have taken Appellant's property by duress or other means and he must have received, possessed, or wrongfully detained Appellant's property.

"An action for money had and received is an action sounding in assumpsit." *Jurgensmeyer v. Boone Hospital Center*, 727 S.W.2d 441, 443 (Mo.App. W.D.1987). "Such an action lies for restitution of money that belongs in good conscience to the plaintiff, but was obtained by the defendant by duress or other means making it unjust for the defendant to keep the money." *Id.*

"Unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust." *Woods v. Hobson*, 980 S.W.2d 614, 618 (Mo.App. S.D.1998) (citations omitted). It is based on a theory of quasi contract or contract implied in law. *Id.* It's elements are "(1) a benefit conferred by one party on another; (2) appreciation (or recognition) by the receiving party of the fact that what was conferred was a benefit; and (3) accep-

tance and retention of the benefit by the receiving party." *Id.*

Replevin is a possessory action. *Monarch Loan Co. v. Anderson Transmission Service*, 361 S.W.2d 328, 331 (Mo.App.1962). To recover on this cause of action, it is necessary to prove a right to immediate possession of the property at the time of the filing of the suit and the wrongful detaining by the defendant of the same. *Id.*

As indicated earlier, we accept as true the fact that Sheriff Page did not participate in the sobriety checkpoint at which Appellant was stopped and was not even aware that the checkpoint had been set up. Sheriff Page did not participate in the search or seizure of Appellant's property. He did not participate in the preparation of the application for the transfer order nor offer testimony, in person or by affidavit, in support of the motion. At no time did he ever receive or convert any of the money or the motor home to his own use or possession. Only after the transfer order had been entered and the property was transferred did Sheriff Page request that an equitable share of the proceeds to be sent to LANEG. He did not personally endorse the check that was sent. We find there was no evidence that Sheriff Page possessed or wrongfully detained Appellant's property; therefore, Sheriff Page is entitled to judgment as a matter of law. The trial court did not err in granting summary judgment to Sheriff Page. Point III is denied.

Finally, Appellant raises two points concerning the allegedly defective procedures used in obtaining the initial

---

that argument has not been raised nor do we reach that result in this opinion. *See*

§ 513.623; Mo. Const. art. 9, § 7.

transfer order.[11] Because each of the respondents is entitled to summary judgment as a matter of law, there is no purpose to be served in analyzing the prior application for transfer and subsequent transfer order.[12] The current action is not a direct appeal from the original order, which was entered on September 9, 1998, nor is it a motion to vacate or set aside the prior order. We decline to issue an advisory opinion. *Carter v. St. John's Regional Medical Center*, 88 S.W.3d 1, 21 (Mo. App. S.D.2002).

The judgment of the trial court is affirmed.

PREWITT, P.J., and SHRUM, J., concur.

---

**11.** Appellant raises a sixth point, which claims that all three causes of action are proper "in such cases." Appellant's point preserves nothing for appeal as it is a multiple-pronged contention which fails to set out the wherein and why of the trial court's error. *See Morrow v. Fisher*, 51 S.W.3d 468, 473 (Mo.App. S.D.2001). Furthermore, all of Appellant's contentions have been addressed in Points I, II, and III as evidenced by Appellant's one page argument which simply cites to *Karpierz v. Easley*, 68 S.W.3d 565 (Mo.App. W.D.2002).

**12.** An analysis of the legal validity of the initial order does not change the analysis that Chief Webster's actions were executed pursuant to a facially valid court order.